Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 Two questions arise-in this case:
 

 1st. Was there any liability on the part of the government to refund these duties prior to the act establishing the Court of Claims ?
 

 
 *126
 
 2d. If not, has that act fixed any new liability’on the government?
 

 The immunity of the United States from suit is one of the main elements to be considered in determining the merits of' this controversy. Every government has an inherent right to protect itself against suits, and if, in the liberality of legislation, they are permitted,.it is only on such terms- and conditions as ai’e prescribed 'by statute. The principle is fundamental, applies to every sovereign power, aud but for the protection which it affords, the government would be unable to perform the various duties for which it was created. It would be impossible for it to collect revenue for its support, without infinite embarrassments and delays, if it was subject to civil processes the same as a private person.
 

 It is not important for'the purposes of this suit, to notice any of the acts of Congress on the subject of the payment of duties on imports, ánterior to the act of February 26,1845.
 
 *
 
 This act altered the rule previously in force, and required the party of whom duties were claimed; and who denied the right, to elhim them, to protest in writing, with a specific statement of the grounds of objection.
 

 Through this law Congress said to the importing merchant, you must pay the duties assessed against you; but,.asyou¡ say, they are illegally assessed, if you , file a written protest stating'wherein the illegality consists, you can test the question of your liability to pay, in a suit against the collector, to be-tried in due course of law, and, if the courts decide in your favor, the treasury will repay you; but in no other wav will the government be responsible to refund;
 

 The written protest, signed by the party, faith the definite grounds of objection, were conditions precedent to the right to sue,, and if otnitted, all right of action was gone. These conditions were necessary for the protection of the government, as they informed the officers charged with the collection of the revenue from imports, of the merchant’s reasons for claiming exemption, and enabled the Treasury Depart
 
 *127
 
 ment to judge of their soundness, and to decide on the risk of faking the duties in the face of the objections. There was no hardship.in the case, because the law was notice equally to the collector and importer, and was a rule to guidp their conduct-, in case differences should arise in relation to the laws for'the imposition of duties: The allowing a suit at all, was an act of beneficence on the part of the government. As it had confided to the Secretary of the Treasury the power of deciding in the first instance on the ámouut of duties demandable on any specific importation, so it could have made him the final arbiter in all disputes concerning' the same. After the passage of the law of 1845, the duties in controversy were paid.
 

 The appellants say they were illegally exacted, because it was decided by this court, in
 
 Lawrence
 
 v.
 
 Caswell,*
 
 that the duties ought to be charged only upon the quantity of liquors actually imported, and not on the contents stated in the invoices; but the Chief Justice took occasion to observe in deciding that case, “ that where no protest was made the duties are not illegally exacted in the legal sense of the term. If the party acquiesces, and does not by his protest appeal to the judiciál tribunals, the duty paid is not illegally exacted, but is paid in obedience to the deeisiou of the tribunal (the Secretary of the Treasury) to which the law had confided the power of deciding the question.” In view of this decision and the plain requirements of the law, how can Nicholl '& Co. complain? They knew .by proceeding in a certain way they could resort to the legal tribunals, and yet for a series of years they imported liquors, and paid the duties demanded without objection. They had an equal right, with the Secretary of the Treasury, to construe the law under which the duties were claimed, and as they chose nqt to appeal to the courts, they adopted the construction which the secretary put on the law, and are concluded by his decision. If a party who did not adopt' that construction placed himself in a way to contest it,, and got a decision that it was
 
 *128
 
 erroneous, such decision cannot enure to the benefit of Nicholl & Co., who by their conduct notified the government, so far as they were concerned, they acquiesced in the secretary’s construction of the law. It may be ^their misfortune' that they did not appeal from the secretary’s decision; but
 
 At
 
 is a misfortune that’oecui’s to.any party, in a lawsuit, who refuses to appeal from the decision of an inferior court, and afterwards finds, by means of another’s litigation, that if he had appealed the decision would have been reversed.
 

 If the duties demanded of Nicholl & Co. had. been paid under protest, their payment, in the sense of the law, would have beer compulsory, but as they were paid without protest it was a voluntary payment, doubtiessimade and received in mutual mistake of the law; but in such a case, as was decided in
 
 Elliott
 
 v.
 
 Swartwout,
 

 *
 

 no action will lie to recover back the poney. And so this court has'repeatedly held.
 
 †
 

 It is clear, therefore, that the appellants are without remedy, unless a new liability has been imposed on the government by the act creating the Court of Claims.
 

 Does this act confer oh the appellants any further or dif-' ferent rights than -they bad prior to its passage ,? If. not', thfere is an end to this suit.
 

 The Court" of Claims has power to-hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the government of the United States.
 

 Conceding, that this jurisdiction draws to it cases arising under the revenue laws, "then it is contended, as this suit is founded on one of the tariff acts of Congress, which has béen judicially interpreted so as to sustain the claim, therefore the case of 'the appellants is brought within the first jurisdictional clause of the act creating the" Court of Claims. JBut this result does not follow, for if the court has decided that the appellants, if they had protested* would have been entitled
 
 *129
 
 to be reimbursed for the excess of duties paid by them, it has also decided, by not protesting they lost all right to ask for repayment; and there has been no law of Congress passed since this decision.placing them in the position they would have been if they had protested. Neither can they invoke to their aid a regulation of the Treasury Department, which alone of all the departments deals with the question of duties on imports, for there is no regulation touching the subject, as is vei’y evident from the averment in their.petition, that the Treasury Department would not pay them because they omitted to protest.
 

 Besides, if there had been a regulation of the department on the subject, it could not affect the rights of the appellants, for such a regulation cannot change a law of Congress.
 

 It is insisted, however, if this suit cannot be sustained on these grounds, it can be sustained.on an implied contract springing from the obligation of the government to refund all duties that are illegally exacted. But we have seen that these duties were not illegally exacted, were paid voluntarily, and there is no such thing as an implied promise to pay^ against the positive command of a statute.
 
 *
 

 Enough has been said to show that if the Court of Claims could take jurisdiction of this class of eases, its judgment was right on the merits of this particular case.
 

 ■ But after, all, the important subject of inquiry is, did Congress, in creating the Court of Claims, intend to confer on it the power to hear and determine cases arising under the revenue laws?
 

 The prompt collection of the revenue, and its faithful application, is one of the most vital dirties of government. Depending as the government does on its revenue to meet, not oiily its current expenses, but to pay the interest on its debt, it is of the utmost importance that it should be collected with despatch, and that the officers of the treasury should be able to make a reliable' estimate of means, in order to meet liabilities. It would be difficult to do. this, if the receipts
 
 *130
 
 from duties anddnternal taxes paid into the treasury, were liable to be taken out of it, on suits prosecuted ini the Court of Claims for alleged errors and mistakes, concerning which the officers charged with the collection and disbursement of the revenue had received no information. Such a .policy would be disastrous to the finances of the country, for, as there is no statute of limitations to bar these suits, it would be impossible to tell, in adyance, how much money would be required to pay the judgments obtained on them, and the result would be, that the treasury estimates for any current year would be unreliable. To guard against such consequences, Congress has from time to time passed laws on the subject of the revenue, which Dot only provide for the manner of its collection, but also point out a way in which errors can be corrected. These laws constitute a system, which Congress has provided for the benefit of those persons who complain of illegal assessments of taxes and illegal exaction's of duties. In the administration of the tariff laws, as we have seen, the Secretary of the Treasury decides what ■is due on a specific importation of goods, but if the importer is dissatisfied with this decision, he can contest the question in a1 suit against the collector, if, before he pays the duties, he tells the officers of the law, in writing, why he objects to their payment.
 

 And an. equal provision has been made to correct errors in,the administration of the internal revenue laws. The party aggrieved can test the question of the illegality of an assessment, or collection of taxes, by suit; but he cannot do this until he has. taken an appeal to the Commissioner of Inter.nal Revenue. If the commissioner delays his decision 'beyond the period'of six months from the time the appeal is taken, then suit may be brought at any time within twelve months from the date of the appeal.
 
 *
 
 Thus it will be seen that the person who believes he has suffered wrong at the hands of the assessor or collector, can appeal to the courts; but he cannot do this until he has taken an intermediate appeal to
 
 *131
 
 the commissioner, and at all events, he is barred from bringing a suit, unless he does it within a year from the time the' commissioner is notified of his'appeal. The object of these different provisions is apparent. While the government is desirous to secure the citizen a mode of redress against erroneous assessments or collections, it says to him; we want all controverted questions concerning the revenue settled speedily, and if you have complaint to make, you must let the Commissioner of. Internal Revenue know the grounds of it; but if he decides against you, or fails to decide at all, you can test the question in the courts if you bring your suit within a limited period of time.
 

 These provisions are analogous to,those made for the benefit of the importing merchant, and the same results, neces-. sarily follow. If the importer does not protest, bi.s¡ right of action is gone. So, if the party complaining of an illegal assessnient does not appeal to, the commissioner, he' iá also barred of the right to sue, and he, is without remedy, even if he- does appeal, uuless he sues within twelve months. Can it be supposed that Congress, after having carefully constructed á revenue system, with ample provisions to redress wrong, intended to give to the taxpayer and importer . a further and different remedy ?
 

 •The m'ischiéfs that would result, if the' aggrieved party could disregard the provisions in the system designed expressly-for his security and benefit, and sue at any time in • the Court of Claims, forbid the idea that Congress'intended to allow any other modes to redress a supposed wrong in the operation of the revenue laws, than such as are particur larly given by those laws.
 

 Without pursuing the subject further, we are satisfied that cases arising under the revenue laws are not within the iurisdiction of the Court of Claims.
 

 Judgment aeeipmed.
 

 Howard, 488.
 

 *
 

 5 Statutes at Large, 727.
 

 *
 

 10 Peters, 153.
 

 †
 

 Bend
 
 v.
 
 Hoyt, 13 Peters, 268; Lawrence
 
 v.
 
 Caswell, 13 Howard, 488; Curtis v. Fiedler, 2 Black, 461.
 

 *
 

 Cary
 
 v.
 
 Curtis, 3 Howard, 236.
 

 *
 

 14 Stat. at Large, 111, amendment to § 44; § 19, on p. 152.