Peake, Oh. J.,
delivered the opinion of the court:
The claimants were subjects of the French empire and merchants resident in New Orleans, and they gave no aid or comfort to persons engaged in the rebellion against the United States.
By the Australian ship Katika they imported into New Or *558 leans from Marseilles, France, a quantity of merchandise, which was entered at the custom-house in New Orleans on the 2d day of May, 1865, on which day they paid to the collector of customs at that port, as a deposit to cover the amount of duty which, on calculation, might be found due on said merchandise, the-sum of $.4,995.39, in gold; and at the same time, in consideration of the" delivery of said merchandise to them, they gaveboñd in the sum of $16,000, conditioned that they should pay any excess of duty over and above the said sum of $4,995.39 which might be found to be due according to law on said merchandise.
Subsequently the collector made his calculation^ the duties imposed bylaw on said merchandise, and found the same to be $4,374.91, being $620.48 less than the amount deposited.
On the 29th of April, 1864, the “ Joint resolution to increase-temporarily the duties on imposts” (13 Stat. L., 405) was passed, providing “that, until the end of sixty days from the passage of this resolution, 50 per cent, of the rates of duties and imposts now imposed by law on all goods, wares, merchandise, and articles imported shall be added to the present duties and imposts now charged on the importation of such articles.”
On the 3d of May, 1864, the Secretary of the Treasury issued a “ circular to collectors of customs,” in the following terms:
“ Tee as un, y Department, May 3,1804.
“Doubtshaving been expressed as to the proper construction of the joint resolution of April 29,1864, increasing duties on imports, you are hereby informed that, in the opinion of the Department, the increased duty is applicable to all goods upon which the duty has not been paid, including those bonded in warehouses or in transitu from one port to another under-bond.
“ You will therefore require the payment of the additional duty on such goods.” -
In pursuance of the instructions contained in this circular,, the collector of the port of. New Orleans imposed upon said merchandise an additional duty of $2,187.46, being 50 per cent, of the amount of duties previously calculated by him.
This sum the claimants refused to pay, and the United States- *559 brought suit against them in the circuit court of the United States for Louisiana, on the bond aforesaid, to recover the-same. The claimants defended the suit, denying that the merchandise was liable to the 50 per cent, additional .duty; and on this issue the circuit court, on the 17th of December, 1864, gave judgment against the United States and in favor of claimants. From this judgment the United States appealed to the Supreme Court of the United States, by which court, on the 2d of February, 1867, the said appeal was dismissed; and no proceedings have been instituted in court on the part of the United States to obtain a further review of said judgment of the circuit court, either by appeal, writ of error, or otherwise.
The claimants now sue to recover $820.48, being the excess of the money deposited by them with the collector, over the amount of duties first calculated by him on the merchandise.
It is claimed on behalf of the defendants that, as the case arises under the revenue laws, this court, under the ruling of the Supreme Court in the case-of Wiehols v. United States, (7 Wall., 122,) has no jurisdiction of the action.
In our opinion this point cannot be sustained. The claim, reduced to its simplest form of statement, is for so much money had and received by the defendants for the use of the claimants. The agreed statement of facts shows plainly and conclusively that not a cent of revenue is involved in the case, but a mere right to reclaim an acknowledged overpayment. If the dispute were about the amount which the Government was entitled to hold for duties, it would be a question of revenue; but there is not the least question of that sort. The collector, after receiving the money deposited by claimants, calculated and ascertained the lawful duties demandable, and the claimants acquiesced in his decision. The amount calculated and ascertained by him was revenue, and the Government was entitled to hold it, and its right to it is not questioned by claimants. Not a cent above that was the Government entitled to keep. When it received the claimants’ money as a deposit for a specified purpose, there arose in law an implied contract on its part to repay to them whatever remained of that money after fulfilling that purpose.
Such are our views of the case on principle. They are, as we conceive, sustained by the statutory provisions applicable to the case, to which we now direct attention.
*560 The case rests upon the construction to be given to section' 1G of the uAct to increase duties on imports, and for other purposes ,” June 30,1864, (13 Stat. L., 202,) which is in these words:
“ That whenever it shall be shown to the satisfaction of the Secretary of the Treasury that, in any case of unascertained duties, or duties or other moneys paid under protest and appeal, as hereinbefore provided, more money has been paid to the collector, or person acting as such, than the law requires should have been paid, it shall be the duty of the Secretary of the Treasury to draw his warrant upon the Treasurer in favor of the person or persons entitled to the overpayment, directing the said Treasurer to refund the same out of any money in the Treasury not otherwise appropriated.”
This provision refers to two descriptions of overpayment: 1. That occurring in the case of payment made in advance of the legal ascertainment of the duties j which is the case of these claimants; and, 2. That occurring where the importer pays under protest', and it is afterward determined that “ more money has been paid than the law requires should have been paid f which is not the case of these claimants.
As to the former description of overpayment, the law is too explicit for comment, in requiring it to be refunded as soon as “it shall be shown to the satisfaction of the Secretary of the Treasury ” that such overpayment has been made. To withhold it after the Secretary is satisfied on that point, is a violation of the letter and the spirit of the law. To enable the party to reclaim his own in such case, the Government imposes but one condition — that the Secretary shall be so satisfied. The moment he signifies that he is so, the obligation of the Government to refund is complete, without appeal. From that moment the case ceases to be one of revenue, because by the very fact of his being satisfied that the overpayment was made, it is finally and conclusively established that, to the. amount of the overpayment, the Government has money of the importer, which, by express law, it has agreed shall be repaid to him.
It follows, then, that whether this court has jurisdiction of this action, depends upon whether the Secretary of the Treasury has signified himself satisfied that the overpayment was made as averred by the claimants. If he has not, then it is still a question of revenue, and under the ruling of the Supreme *561 Court iu MchoVs Case is not witbin our jurisdiction; if ho has, then it is a question of contract, of which we may, as we conceive, lawfully take cognizance, on the principles laid down in the cases of Michael Daily and W. J. Patten, decided at the present term of this court.
Under ordinary circumstances it would be difficult to decide whether the Secretary of the Treasury had been satisfied of the fact of overpayment, if his official declaration to that effect were not produced. It might be questioned whether evidence of any other character would prove the fact. But, as we conceive, it is not necessary that the official declaration should assume the form of a direct and formal adjudication by him of the fact. If in any manner it appears f rom himself that he is sat - isfiedthat the overpayment was made, we are justified in acting.
Now, this case is submitted to us upon an agreed statement of facts, which the Secretary of the Treasury in writing declares to be “ correct and sufficient,” and which both parties agree to admit in evidence. That statement sets out circumstantially the transaction, as stated in the opening of this opinion. It shows the overpayment by the claimants of the $620.48 now sued for, in as simple, clear, and direct a manner as it was capable of being shown; and does not deny that the Secretary was satisfied of its having been made. When he thus authenticates to us a statement of facts, which shows the overpayment as plainly as the subtraction of 2 from 4 will leave 2, are we not justified in holding that he thereby declares himself satisfied that the overpayment was made? If in connection with that plain statement he had cited facts to show that the overpayment was only apparent, not real, another and different conclusion might be reached; but there is nothing of that description; the overpayment is stated arithmetically and unqualifiedly ; and, in our opinion, would not have been so stated if the Secretary had not been satisfied of its existence. For the purposes of this case we hold that he was so.
In the same statement of facts, the matter of the 50 per cent, additional duties imposed by the collector is brought in, and relied upon as in some way defeating or affecting the right of the claimants to have the overpayment refunded. But it cannot have any such effect, for the simple reason that the right of the Government to base any claim whatever upon that assess *562 ment by the collector, bas been completely and finally cut off' by tbe adverse judgment of the court in which, the Government sued the claimants therefor. That assessment, therefore, is, as to this case, as if it had never been.
We fall back, then, upon the simple and single point of the overpayment; and under the views already expressed we have no hesitation in ordering judgment to be entered in favor of the claimants for $620.48, in gold coin, two-third's of which amount are for the use Of Thomas J. Durant.