183 U.S. 483
 22 S.Ct. 165
 46 L.Ed. 289
 CHARLES C. McCHORD, James F. Dempsey, and John C. Wood, Appts.,
v.
CINCINNATI, NEW ORLEANS, & TEXAS PACIFIC RAILWAY COMPANY. CHARLES C. McCHORD, James F. Dempsey, and John C. Wood, Appts., v. LOUISVILLE & NASHVILLE RAILROAD COMPANY. CHARLES C. McCHORD, James F. Dempsey, and John C. Wood, Appts., v. LOUISVILLE, HENDERSON, & ST. LOUIS RAILWAY COMPANY. CHARLES C. McCHORD, James F. Dempsey, and John C. Wood, Appts., v. CHESAPEAKE & OHIO RAILWAY COMPANY. CHARLES C. McCHORD, James F. Dempsey, and John C. Wood, Appts., v. SOUTHERN RAILWAY COMPANY in Kentucky.
 Nos. 141-145.
 Argued January 7, 8, 1901.
 Ordered for reargument March 25, 1901.
 Reargued November 11, 12, 1901.
 
 These are appeals from the final decrees of the circuit court of the United States for the district of Kentucky, perpetually 484 enjoining Charles C. McChord and others, railroad commissioners of the state of Kentucky, from doing any of the things required by, or from taking any action whatever against complainants under, a certain act of the general assembly of the commonwealth of Kentucky, approved March 10, 1900, which is entitled and reads as follows:
 'An Act to Prevent Railroad Companies or Corporations Owning and Operating a Line or Lines of Railroad, and its Officers, Agents, and Employees, from Charging, Collecting, or Receiving Extortionate Freight or Passenger Rates in this Commonwealth, and to Further Increase and Define the Duties and Powers of the Railroad Commission in Reference Thereto, and Prescribing the Manner of Enforcing the Provisions of this Act and Penalties for the Violations of its Provisions.
 'Be it enacted by the General Assembly of the Commonwealth of Kentucky:
 'Sec. 1. When complaint shall be made to the railroad commission accusing any railroad company or corporation of charging, collecting or receiving extortionate freight or passenger rates over its line or lines of railroad in this commonwealthk or when said commission shall receive information or have reason to believe that such rate or rates are being charged, collected, or received, it shall be the duty of said commission to hear and determine the matter as speedily as possible. They shall give the company or corporation complained of not less than ten days' notice, by letter mailed to an officer or employee of said company or corporation, stating the time and place of the hearing of same; also the nature of the complaint or matter to be investigated, and shall hear such statements, arguments, or evidence offered by the parties as the commission may deem relevant; and should the commission determine that the company or corporation is or has been guilty of extortion, said commission shall make and fix a just and reasonable rate, toll, or compensation which said railroad company or corporation may charge, collect, or receive for like services thereafter rendered. The rate, toll, or compensation so fixed by the commission shall be entered and be an order on the record book of their office, and signed by the commission, and a copy thereof mailed to an officer, agent, or employee of the railroad company or corporation affected thereby, and shall be in full force and effect at the expiration of ten days thereafter, and may be revoked or modified by an order likewise entered of record. And should said railroad company or corporation, or any officer, agent, or employee thereof charge, collect, or receive a greater or higher rate, toll, or compensation for like services thereafter rendered than that made and fixed by said commission, as herein provided, said company or corporation, and said officer, agent, or employee shall each be deemed guilty of extortion, and upon conviction shall be fined for the first offense in any sum not less than $500 nor more than $1,000, and upon a second conviction, in any sum not less than $1,000 nor more than $2,000, and for third and succeeding convictions, in any sum not less than $2,000 nor more than $5,000.
 'Sec. 2. The circuit court of any county into or through which the line or lines of road carrying such passenger or freight owned or operated by said railroad, and the Franklin circuit court, shall have jurisdiction of the offense against the railroad company or corporation offending, and the circuit court of the county where such offense may be committed by said officer, agent, or employee shall have jurisdiction in all prosecutions against said officer, agent, or employee.
 'Sec. 3. Prosecutions under this act shall be by indictment.
 'Sec. 4. All prosecutions under this act shall be commenced within two years after the offense shall have been committed.
 'Sec. 5. In making said investigation said commission may, when deemed necessary, take the depositions of witnesses before an examiner or notary public, whose fee shall be paid by the state, and upon the certificate of the chairman of the commission, approved by the governor, the auditor shall draw his warrant upon the treasurer for its payment.'
 All the bills sought the same relief, and their averments, excepting those in respect of alleged contracts with the state in relation to rates set up in the bills of the Louisville & Nashville Railroad Company and of the Cincinnati, New Orleans, & Texas Pacific Railway Company, were in substance the same.
 The act of March 10, 1900, was set out in full, its provisions recapitulated, and complainants' view of the legal effect thereof given. The 3d paragraph was: 'All of your orator's rates charged, collected, or received within the state of Kentucky are just and reasonable, and have not been sufficient for many years to give it a fair return upon the reasonable value of its investment, notwithstanding it has at all times operated its property with the strictest economy and in the most skilful manner.'
 It was then averred that it was the duty of the railroad commission to see that the laws relating to all railroads, except street, were faithfully executed, and to exercise a general supervision over the railroads of the state; that its functions were administrative; that it was not established as a court; and that under the state Constitution it could not be permitted to exercise judicial powers. That all common carriers were subject only to the requirement that their rates should be just and reasonable, and they were in case of controversy entitled to have the judg- ment of the courts on that question; but that the act referred to singled out railroad corporations, and deprived them of any opportunity to have a judicial determination of the reasonableness of their rates when disputed, substituted the nonjudicial determination of the railroad commission, and subjected them to penalties, there being no infliction of penalties provided as to other common carriers. That if defendants be permitted to proceed under the act, each complainant 'will be compelled to charge the rates fixed by them, without any opportunity for a judicial investigation and determination as to their reasonableness, and it will thus be deprived of the lawful use of its property, and, in substance and effect, of its property itself, without due process of law, and will also be denied the equal protection of the laws, in violation of § 1 of article 14 of the Amendments to the Constitution of the United States.'
 It was further averred that the act was in conflict with clause 3 of § 8 of article 1 of the Constitution of the United States, giving Congress the exclusive power to regulate commerce among the states, and with the acts of Congress in that behalf.
 The bills then continued:
 'And defendants have called for and obtained from your orator a list of rates fixed and charged by it for transportation of freight and passengers over its railroads in the state of Kentucky, for the purpose of considering whether or not they shall be altered and reduced in accordance with the terms of said act, and are giving it out in speeches and interviews that they intend to proceed at once under said act, and unless restrained by the order of this court defendants will proceed at once to hear and determine complaints under said act, although the same is in contravention of the Constitution of the United States in all the particulars hereinabove set out, and is therefore null and void; and will proceed thereupon to reduce your orator's rates to such as they think your orator should charge, and will thereafter at pleasure modify and still further reduce the rates so fixed, and if your orator does not observe the rates so fixed, no matter how unjustly and unreasonably low, your orator will be subjected to innumerable prosecutions throughout the state of Kentucky for failing to comply with such rates fixed in this unconstitutional manner, and it will be subjected to innumerable suits by consignors and consignees, who will claim the right to ship at said rates so unconstitutionally fixed and to sue for any excess they may be charged over said rates, though rightfully charged, and at the same time all your orator's officers and agents and servants, though perfectly innocent of any offense, and though merely assisting your orator to maintain its constitutional rights, will be indicted, prosecuted, and heavily fined, to the great demoralization of the public service which your orator is bound to render, and so it is, unless said defendants are restrained by the order of this court from proceeding under said act, your orator's contract rights will be impaired, it will be deprived of its property without due process of law, denied the equal protection of the law, and subjected to great and irreparable wrong and injury, and to a vast multiplicity of prosecutions and actions in the courts of said state.'
 The cases were disposed of on demurrer.
 The Constitution of the state of Kentucky provided:
 '§ 209. Railroad commission—Number—Qualifications— Powers—Election—Term of office—Removal of.—A commission is hereby established, to be known as 'The Railroad Commission,' which shall be composed of three commissioners. During the session of the general assembly which convenes in December, 1891, and before the 1st day of June, 1892, the governor shall appoint, by and with the advice and consent of the senate, said three commissioners, one from each superior court district as now established, and said appointees shall take their office at the expiration of the terms of the present incumbents. The commissioners so appointed shall continue in office during the term of the present governor, and until their successors are elected and qualified. At the regular election in 1895, and every four years thereafter, the commissioners shall be elected, one in each superior court district, by the qualified voters thereof, at the same time and for the same term as the governor. No person shall be eligible to said office unless he be, at the time of his election, at least thirty years of age, a citizen of Kentucky two years, and a resident of the district from which he is chosen one year next preceding his election. Any vacancy in this office shall be filled as provided in § 152 of this Constitution. The general assembly may, from time to time, change said districts so as to equalize the population thereof, and may, if deemed expedient, require that the commissioners be all elected by the qualified voters of the state at large. And if so required, one commissioner shall be from each district. No person in the service of any railroad or common carrier, company, or corporation, or of any firm or association conducting business as a common carrier, or in anywise peculiarly interested in such company, corporation, firm, or association, or in the railroad business, or as a common carrier, shall hold such office. The powers and duties of the railroad commissioners shall be regulated by law; and until otherwise provided by law, the commission so created shall have the same powers and jurisdiction, perform the same duties, be subject to the same regulations, and receive the same compensation as now conferred, prescribed, and allowed by law to the existing railroad commissioners. The general assembly may, for cause, address any of said commissioners out of office by similar proceedings as in the case of judges of the court of appeals; and the general assembly shall enact laws to prevent the nonfeasance and misfeasance in office of said commissioners, and to impose proper penalties therefor.'
 '§ 218. Penalty for charging more for short than long haul Power of commission.—It shall be unlawful for any person or corporation owning or operating a railroad in this state, or any common carrier, to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier, or person, or corporation owning or operating a railroad in this state, to receive as great compensation for a shorter as for a longer distance; provided, That upon application to the railroad commission, such common carrier, or person, or corporation owning or operating a railroad in this state may, in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the commission may from time to time prescribe the extent to which such common carrier, or person, or corporation, owning or operating a railroad in this state may be relieved from the operations of this section.'
 The following are sections of the General Laws of Kentucky of 1894:
 '§ 816. Extortion—What is.—If any railroad corporation shall charge, collect, or receive more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in this state, or for the use of any railroad car upon its track, or upon any track it has control of, or the right to use in this state, it shall be guilty of extortion.
 '§ 817. Discrimination—What is.—If any corporation engaged in operating a railroad in this state shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person a greater or less compensation for any service rendered in the transportation of passengers or property than it charges, demands, collects, or receives from any other person for doing for him a like and contemporaneous service in the transportation of a like kind of traffic, it shall be deemed guilty of unjust discrimination.
 '§ 818. Preference or advantage forbidden—Rules defining same Quantity of freight.—It shall be unlawful for any corporation to make or give any undue or unreasonable preference or advantage to any particular person or locality, or any particular description of traffic, in any respect whatever, in the transportation of a like kind of traffic; or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage. . . .
 '§ 819. Penalty in damages for extortion, discrimination, preference—Jurisdiction—Duty of commission—Limitation.—Any railroad corporation that shall be guilty of extortion or unjust discrimination, or of giving to any person or locality, or to any description of traffic, an undue or unreasonable preference or advantage, shall, upon conviction, be fined for the first offense in any sum not less than $500 nor more than $1,000; and upon a second conviction, in any sum not less than $500 nor more than $2,000; and upon a third conviction, in any sum not less than $2,000 nor more than $5,000. The circuit court of any county into or through which the line of railroad may run, owned or operated by the corporation alleged to be guilty as aforesaid, and the Franklin circuit court, shall have jurisdiction of the offense, which shall be prosecuted by indictment or by action in the name of the commonwealth, upon information filed by the board of railroad commissioners; and such railroad corporation shall also be liable in damages to the party aggrieved to the amount of damages sustained, together with cost of suit and reasonable attorneys' fees to be fixed by the court. Indictments under this section shall be made only upon the recommendation or request of the railroad commission, filed in the court having jurisdiction of the offense; and all prosecutions and actions under this law shall be commenced within two years after the offense shall have been committed or the cause of action shall have accrued.
 '§ 820. Long and short haul over same road—Penalty Jurisdiction of courts—Duty of commission.—If any person owning or operating a railroad in this state, or any common carrier, shall charge or receive any greater compensation in the aggregate for the transportation of passengers or property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line, in the same direction, the shorter being included within the longer distance, such person shall for each offense be guilty of a misdemeanor, and fined not less than $100 nor more than $500, to be recovered by indictment in the Franklin circuit court or the circuit court of any county into or through which the railroad or common carrier so violating runs or carries on its business. Upon complaint made to the railroad commission that any railroad or common carrier has violated the provisions of this section, it shall be the duty of the commission to investigate the grounds of complaint, and if, after such investigation, the commission deems it proper to exonerate the railroad or common carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the commission, and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the commission; and after such order, the railroad or carrier shall not be prosecuted or fined on account of the complaint made. If the commission, after investigation, fails to exonerate the railroad or carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the commission, and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the commission; and after such order, it shall be the duty of the commission to furnish a statement of the facts, together with a copy of its order, to the grand jury of any county, the circuit court of which has jurisdiction, in order that the railroad company or carrier may be indicted for the offense; and the commission shall use proper efforts to see that such company or carrier is indicted and prosecuted.
 '§ 821. Three commissioners—Duties.—There is established a department in the state government to be known as the railroad commission, which shall be composed of three commissioners, one of whom shall act as chairman, and whose duty it shall be to see that the laws relating to all railroads, except street, are faithfully executed, and to exercise a general supervision over the railroads of the state. Each of said commissioners is authorized to administer oaths, and two of them shall constitute a quorum.'
 '§ 826. Rates from foreign points to be examined by commission—Duty of commission.—Said commission shall examine all through freight rates from points out of this state to points into this state; and whenever they find that a through rate charged into or out of this state is excessive or unreasonable or discriminating in its nature, they shall call the attention of the railroad officials in this state to the fact, and to urge them of the propriety of changing such rates. And when such rates are not changed, it shall be the city of said commission to present the facts to the Interstate Commerce Commission and appeal to it for relief, and they shall receive upon application the services of the attorney general of this state and into the condition, management, and all other matters concerning the business of railroads in this state, so far as the same pertain to the relation of such railroads to the public, and whether such railroad corporations, their officers and employees, comply with the laws of the state; and whenever it shall come to their knowledge or they shall have reason to believe that the laws affecting rail- road corporations in their business relations to the public have been violated, they shall prosecute, or cause to be prosecuted, the corporations or persons guilty of such violations.
 '§ 827. Examination of officers and employees by commission - Penalty for contempt. - They shall have the power to examine under oath any person, or the directors, officers, agents, and employees of any railroad corporation doing business in this state concerning the management of its affairs, and to obtain information pursuant to this law; and shall have power to issue subpoenas for the attendance of witnesses, and to administer oaths; and any person who shall neglect or refuse to obey the process of subpoenas issued by said commission, or who, being in attendance, shall refuse to testify, shall be deemed guilty of a misdemeanor, and, upon con- viction thereof, shall be punished for each offense by a fine of not less than $50 nor more than $100, or by imprisonment not less than ten nor more than fifty days, or both, in the discretion of the jury.
 '§ 828. Penalty for failing to make required reports or obstructing commission—Jurisdiction of courts.—Each officer, agent, or employee failing or refusing to make under oath any report required by the commission within the time required, or failing or refusing to answer fully, under oath, if required, any inquiry propounded by the commission, or who shall in any way hinder or obstruct the commission in the discharge of its duty, shall be guilty of a misdemeanor, and shall be fined for each offense not less than $500 nor more than $1,000; and it shall be the duty of the commission to prosecute the person offending; and the Franklin circuit court, or the circuit court of any county through which the railroad runs, the officer, agent, or employee of which has violated the provisions of this section, shall have jurisdiction of such prosecution; and it shall be the duty of the commonwealth's attorney to prosecute all indictments, actions, and proceedings under this law.
 '§ 829. Complaints against companies—Award Award of commission—Proceedings upon.—The commission shall hear and determine complaints under §§ 816, 817, 818. Such complaints shall be made in writing, and they shall give the company complained of not less than ten days' notice of the time and place of the hearing of the same. They shall hear and reduce to writing all the evidence adduced by the parties, and render such award as may be proper. If the award of the commission be not satisfied within ten days after the same is rendered, the chairman shall file a copy of said award and the evidence heard in the office of the clerk of the circuit court of the county which, under the Code of Practice, would have jurisdiction of said controversy, and the clerk of said court shall enter the same on the docket for trial; and summons shall be issued, as in other cases, against the party against whom the award shall have been rendered, requiring said party to appear in the court within the time allowed in ordinary cases, and show cause why said award shall not be satisfied. If such party fails to appear, judgment shall be rendered by default, and the same proceedings had thereon as in other ordinary cases. If a trial is demanded the case shall be tried in all respects as other ordinary cases in which the same amount is involved, except that no evidence shall be introduced by either party except that heard by the commission, except such as the court shall be satisfied, by sworn testimony, could not have been produced before the commission by the exercise of reasonable diligence; the judgment and proceedings thereon shall be the same as in other ordinary cases.'
 Messrs. David W. Baird, Robert J. Breckinridge, Lewis McQuown, Zack Phelps, and Aaron Kohn for appellants.
 Messrs. Walker D. Hines, James P. Helm, Alexander Pope Humphrey, Helm Bruce, Edward Colston, W. H. Wadsworth, H. W. Bruce, Thomas K. Helm, and A. M. J. Cochran for appellees.
 Mr. Chief Justice Fuller delivered the opinion of the court:
 
 
 1
 By the decrees the railroad commission of the commonwealth of Kentucky was permanently restrained from proceeding under the act of March 10, 1900, which was alleged and held to be unconstitutional.
 
 
 2
 Conceding that the mere fact that a duly enacted law is unconstitutional does not entitle a party to relief by injunction against proceedings in compliance therewith, it is contended that ground of equity jurisdiction existed here in the want of adequate remedy by the ordinary processes of law for the threatened consequences of the exercise of the power to fix rates in multiplicity of suits and irreparable injury.
 
 
 3
 It is insisted that according to the terms of the act the order of the commission fixing the rate, toll, or compensation which the railroad companies may charge is self-executing, and that no duty to enforce it is imposed on the commission; that the companies are shut up by the act to the final determination of the commission that they have charged more than a just and reasonable rate; and that on the trial of indictments for failure to observe the rates made by the commission the courts cannot entertain any inquiry as to the reasonableness of the rates so fixed, because such inquiry is unwarranted by the statute, and because such an investigation would be illusory and worthless; and that, even if the question of constitutionality could be raised in defense, yet that if such order be permitted to be entered of record and notified as provided, the companies, if they do not comply, will be at once exposed to innumerable prosecutions, and to financial ruin by the accumulation of penalties before a judicial decision as to the validity of the statute could be had, if it should then happen that the statute is upheld.
 
 
 4
 However all this may be, we think it is not to be doubted that these bills cannot be maintained if it appear that the commission is charged with the duty of enforcing the orders it may enter fixing rates. The objection that before this is done the commission is required to exercise judicial functions in determining that the companies have charged or received more than a just and reasonable rate goes to the validity of the act. The fixing of rates is essentially legislative in its character, and the general rule is that legislative action cannot be interfered with by injunction.
 
 
 5
 It is true that in Railroad Commission Cases, 116 U. S. 307, sub nom. Stone v. Farmers' Loan & T. Co. 29 L. ed. 636, 6 Sup. Ct. Rep. 334, 388, 1191, the suit was brought to enjoin the railroad commission of Mississippi from proceeding under the provisions of a certain statute therein mentioned against a railroad company, but the question of jurisdiction does not seem to have been raised. The case was considered on its merits, and the bill directed to be dismissed. Mr. Chief Justice Waite, speaking for the court, among other things, said: 'As yet the commissioners have done nothing. There is, certainly, much they may do in regulating charges within the state, which will not be in conflict with the Constitution of the United States. It is to be presumed they will always act within the limits of their constitutional authority. It will be time enough to consider what may be done to prevent it when they attempt to go beyond.'
 
 
 6
 In New Orleans Waterworks Co. v. New Orleans, 164 U. § . 471, 482, 41 L. ed. 518, 524, 17 Sup. Ct. Rep. 161, 165, the general rule was stated and applied, and Mr. Justice Harlan, who delivered the opinion of the court, said: 'We repeat that when the city council shall pass an ordinance that infringes the rights of the plaintiff, and is unconstitutional and void as impairing the obligation of its contract with the state, it will be time enough for equity to interfere, and by injunction prevent the execution of such ordinance. If the ordinances already passed are in derogation of the plaintiff's contract rights, their enforcement can be prevented by appropriate proceedings instituted directly against the parties who seek to have the benefit of them. This may involve the plaintiff in a multiplicity of actions. But that circumstance cannot justify any such decree as it asks.'
 
 
 7
 The rule was also applied by Mr. Justice Field in Alpers v. San Francisco, 32 Fed. 503, where complainant sought an injunction to restrain the passage of an ordinance which he alleged would impair the obligation of a contract he had with the city. Mr. Justice Field said: 'This no one will question as applied to the power of the legislature of the state. The suggestion of any such jurisdiction of the court over that body would not be entertained for a moment. The same exemption from judicial interference applies to all legislative bodies, so far as their legislative discretion extends. . . . The courts cannot in the one case forbid the passage of a law nor in the other the passage of a resolution, order, or ordinance. If by either body, the legislature or the board of supervisors, an unconstitutional act be passed, its enforcement may be arrested. The parties seeking to execute the invalid act can be reached by the courts, while the legislative body of the state or of the municipality, in the exercise of its legislative discretion, is beyond their jurisdiction. The fact that in either case the legislative action threatened may be in disregard of constitutional restraints, and impair the obligation of a contract, as alleged in this case, does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary.'
 
 
 8
 In Southern Pac. Co. v. California Railroad Comrs. 78 Fed. 236, the law of California provided that the commissioners might 'enforce their decisions, and correct abuses through the medium of the courts;' and, in substance, that after the rate was made by the commission, a copy of the order should be served on the corporation affected thereby, and that twenty days thereafter the rate should take effect. A bill was filed before the twenty days had expired; and Mr. Justice McKenna, then Circuit Judge, held that it was the duty of the commissioners to enforce the rate, and that an injunction would lie. The railroad commission had made an order reducing the grain rates of the company 8 per cent, and had passed a resolution declaring that its general charges were 25 per cent too high, and that 'this board proceed at once to adopt a revised schedule of rates in accordance here with, in order that the same may be in force before January 1, 1896.' The court enjoined the enforcement of the 8 per cent reduction, which had already been made, but declined to restrain the 25 per cent reduction, because no decisive action had been taken.
 
 
 9
 Reading the various sections of the General Statutes of Kentucky, set forth in the statement preceding this opinion, as in pari materia with the act of March 10, 1900, which should be done, since they are parts of one system, having the same general objects in view, we think it apparent that the duty devolves on the commission to enforce the rates it may fix under the latter act. By § 816 extortion was defined to be charging more than a just and reasonable rate. Section 817 defined unjust discrimination, and § 818 forbade undue or unreasonable preference.
 
 
 10
 Section 819 denounced the same penalties on conviction of the offense of extortion, or of unjust discrimination, or of unreasonable preference, and provided for prosecution by indictment, or by action in the name of the commonwealth, on information filed by the board of railroad commissioners; that the railroad companies should be liable in damages to the party aggrieved; and also that prosecution by indictment should only be had on the recommendation or request of the railroad commission.
 
 
 11
 By § 829 the commission was empowered to hear and determine complaints under §§ 816, 817, and 818, and to enforce their awards in the courts.
 
 
 12
 The duty was imposed on the commission to initiate indictments under § 820 for charging greater compensation, in the aggregate, for a shorter than for a longer haul.
 
 
 13
 Section 821 made it the duty of the commission to see that the laws relating to railroads should be faithfully executed, and to exercise a general supervision over the railroads of the state.
 
 
 14
 So that unless the act of March 10, 1900, operated to repeal the provisions of the prior law, by withdrawing from the commission the duty of enforcing the rates it might fix, it was its duty so to do, and indictments were to be found at its instance.
 
 
 15
 Section 816 read thus: 'If any railroad corporation shall charge, collect, or receive more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in this state, or for the use of any railroad car upon its track or upon any track it has control of or the right to use in this state, it shall be guilty of extortion.'
 
 
 16
 In Louisville & N. R. Co. v. Com. 99 Ky. 132, 33 L. R. A. 209, 35 S. W. 129, this section was considered. The court held that the section could not be enforced as a penal statute for want of certainty, and said:
 
 
 17
 'That this statute leaves uncertain what shall be deemed a 'just and reasonable rate of toll or compensation' cannot be denied, and that different juries might reach different conclusions, on the same testimony, as to whether or not an offense has been committed, must also be conceded.
 
 
 18
 The criminality of the carrier's act, therefore, depends on the jury's view of the reasonableness of the rate charged; and this latter depends on many uncertain and complicated elements.
 
 
 19
 'That the corporation has fixed a rate which it considers will bring it only a fair return for its investment does not alter the nature of the act. Under this statute it is still a crime, though it cannot be known to be such until after an investigation by a jury, and then only in that particular case, as another jury may take a different view, and, holding the rate reasonable, find the same act not to constitute an offense. There is no standard whatever fixed by the statute, or attempted to be fixed, by which the carrier may regulate its conduct; and it seems clear to us to be utterly repugnant to our system of laws to punish a person for an act the criminality of which depends, not on any standard erected by the law which may be known in advance, but on one erected by a jury. And especially so as that standard must be as variable and uncertain as the views of different juries may suggest, and as to which nothing can be known until after the commission of the crime.'
 
 
 20
 The court referred to and quoted from Chicago, B. & Q. R. Co. v. Jones, 149 Ill. 361, 24 L. R. A. 141, 4 Inters. Com. Rep. 683, 37 N. E. 247; and Chicago, B. & Q. R. Co. v. People, 77 Ill. 443, in which it was held under a similar statute that the want of certainty in lack of reference to a standard under its 1st section was obviated by its 8th section providing for the making by the railroad and warehouse commissioners of schedules of reasonable and maximum rates, which, being done, the supreme court of Illinois said: 'There will be a standard of what is fair and reasonable, and the statute can be conformed to and obeyed.'
 
 
 21
 Such being the state of the law, the act of March §0, 1900, was passed.
 
 
 22
 The mischief to be cured in respect of extortion, as defined by § 816, was the want of certainty, and the remedy provided was the fixing of the rates by the railroad commission.
 
 
 23
 In so providing, the act, while repeating many of the provisions of § 819, did, indeed, omit reference to an action by way of information and to liability in damages, and it also omitted the provision that indictments should be made only on the recommendation or request of the railroad commission; but it does not therefore follow that it was the legislative intention, without any expression thereof in terms, to repeal so important a provision.
 
 
 24
 Was the provision repealed by necessary implication? 'We say by necessary implication, for it is not sufficient to establish that subsequent laws cover some or even all of the cases provided for by it [the prior law]; for they may be merely affirmative, or cumulative, or auxiliary.' Story, J., Wood v. United States, 16 Pet. 362, 10 L. ed. 995.
 
 
 25
 Repeals by implication are not favored, and are only allowed to the extent that repugnancy exists, and, in order to give an act not clearly intended as a substitute for an earlier one the effect of repealing it, the implication of the intention to do so must necessarily flow from the language used, bearing in mind the necessity and occasion of the law. And where it is plain that the new law is in aid of the purposes of the old law, the latter will not be held to be abrogated except so far as there is palpable inconsistency.
 
 
 26
 We do not think that it was intended to repeal the provision of § 819 requiring indictments to be found only on the recommendation or request of the commission, and still less that it was intended to circumscribe in this particular the general duty of the commission to see that the laws relating to railroads should be faithfully executed.
 
 
 27
 Dealing as we are with the statutes of Kentucky, we are gratified to find these views confirmed by the court of appeals of that commonwealth, in Illinois C. R. Co. v. Com. decided October 25, 1901, its opinion having been furnished us at the close of the argument, and since reported in 23 Ky. L. Rep. 1159, 64S.W.975.
 
 
 28
 In that case the railroad company was indicted under § 820, and fined for charging more for a shorter than a longer haul. The indictment was returned before the railroad commission had determined whether the company should be exonerated as provided by that section. The judgment was reversed, and Hobson, J., speaking for the court, said: 'In the construction of statutes the cardinal aim of the court is to arrive at the intention of the legislature. The court will presume that the legislature meant something by all the provisions of the statute, and will endeavor to give them all a fair effect. If the legislature had intended indictments to be found for each offense, regardless of action by the railroad commission, we see no reason why the section might not have stopped with the first sentence defining the offense and providing for its punishment, for by the next section (Ky. Stat. § 821) it is made the duty of the commission 'to see that the laws relating to all railroads, except street, are faithfully executed;' and under this provision it would be the duty of the commission to see to violations of the preceding section. . . . From the section as a whole it is clear that the legislature had in mind providing for the exoneration of the railroad from its provisions in proper cases, and exempting the carrier from criminal liability to this extent. It therefore provided for an investigation by the railroad commission, a determination by it whether it deemed it proper to exonerate the railroad, and for the enforcement of its decision by indictment by the grand jury in case the railroad was not exonerated. To allow the carrier to be indicted in advance of any action by the railroad commission under this section would be to deprive it of all opportunity for exoneration. The legislature had no such result in mind, but clearly aimed to secure to the carrier a hearing on this question.
 
 
 29
 'The long and short haul matter is only another form of undue discrimination and preference, which are provided for by § 819, and indictments under this section can only be had upon the recommendation of the railroad commission. This has been a settled legislative policy, as shown by the act of April 6, 1882 (see Gen. Stat. 1021), which was in force at the time of the adoption of the Constitution and the present statutes. In other words, the legislature has always acted upon the idea that the interests of the entire people of the state should be looked to in these matters, and that the railroad commission must first determine them before the grand juries of the state should find indictments.'
 
 
 30
 The 4th section of the act of the general assembly of Kentucky of April 6, 1882 (Acts 1881, p. 66, chap. 790), entitled 'An Act to Prevent Extortion and Discrimination in the Transportation of Freight and Passengers by Railroad Corporations, and in Aid of That Purpose to Establish a Board of Railroad Commissioners, and Define its Powers and Duties,' set forth in the edition of the Kentucky Statutes of 1887, p. 1021, and referred to by the court, provided for the infliction of penalties on railroad companies convicted of extortion or unlawful discrimination, and that the offender should be 'prosecuted by indictment or by action in the name of the commonwealth, upon information filed by the board of railroad commissioners;' and also that the companies should be liable in damages to the parties aggrieved. The act of March §0, 1900, does not appear to have been intended to change the settled legislative policy that indictments should be found on the recommendation of the commission.
 
 
 31
 The result of these considerations is that the duty of enforcing its rates rests on the commission, and that none of the consequences alleged to be threatened can be set up as the basis of equity interposition, before the rates are fixed at all. Whether after they are determined their enforcement can be restrained is a question not arising for decision on this record, and we are not called on to dispose of other contentions of grave importance which were pressed in argument as if now requiring adjudication.
 
 
 32
 Decrees reversed and cases remanded to the Circuit Court, with a direction to sustain the demurrers and dismiss the bills.