COHEN et al. v. DURNING, Collector of Customs.

District Court, S. D. New York.
Aug. 16, 1935.

Judah Braunstein, of New York City, for plaintiffs.

Francis H. Horan, John F. Davidson, and Edward J. Ennis, Asst. U. S. Attys., all of New York City (Craigh Leonard, Sp. Asst. to U. S. Atty., of New York City, of counsel), for defendant.

HULBERT, District Judge.

The motion is for an injunction pendente lite.

Plaintiffs are jobbers engaged in the purchase and sale of cotton piece goods, much of which is imported. 650 bales, constituting some 19 shipments, at a total invoice cost of $79,030 are being held by the collector of customs of the port of New York in bonded warehouses for the payment of a *compensating tax* amounting to $9,127.38 in addition to the customs duties. Several other shipments are in transit.

The tax in question is levied pursuant to the Agricultural Adjustment Act of May 12, 1933 (c. 25, 48 Stat. 31, 40, as amended by section 11 of the Act of May 9, 1934, c. 263, 48 Stat. 670, 676 [7 USCA § 615]).

Section 15 (e) reads as follows: "During any period for which a processing tax is in effect with respect to any commodity there shall be levied, assessed, collected, and paid upon any article processed or manufactured wholly or partly from such commodity and imported into the United States or any possession thereof to which this title [chapter] applies, from any foreign country or from any possession of the United States to which this title [chapter] does not apply * * * a compensating tax equal to the amount of the processing tax in effect with respect to domestic processing of such commodity at the time of importation: Provided, That all taxes collected under this subsection upon articles coming from the possessions of the United States to which this title [chapter] does not apply shall not be covered into the general fund of the Treasury of the United States but shall be held as a separate fund and paid into the Treasury of the said possessions, respectively, to be used and expended by the governments thereof for the benefit of agriculture. Such tax shall be paid prior to the release of the article from customs custody or control."

Treasury Regulations 81, chapter IV, as amended by Treasury Decision 4501 (Dec. 4, 1934, Int. Rev. Bull. Vol. XIII-51–7198), provide for the collection of the compensating tax by the collector of customs of the district through which the entry of the imported merchandise is made.

Plaintiffs allege that the statute in question and the regulations adopted contra-

vene section 1 of article 1 and section 8 of article 1, and are also in violation of the Fifth Amendment to, the Constitution of the United States.

Pending the determination of this action, plaintiffs seek to enjoin the collector of the port of New York from collecting or demanding the compensating tax pursuant to the authority aforesaid and that said collector be directed to release to plaintiffs their merchandise upon the payment of the customs duties and the posting by plaintiffs of a bond in the amount of such compensating tax.

A previous application came on before Judge Caffey, who held that the bill was defective and denied the motion, but with leave to amend the bill and renew the motion, which has now been done.

R. S. § 3224 (26 USCA § 154) provides: "No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

■ The enactment of that provision which was derived from the Act of March 2, 1867 (c. 169, § 10, 14 Stat. 475), codified limitations upon the equity jurisdiction of the federal courts. Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; Nichols v. U. S., 7 Wall. 122, 19 L. Ed. 125. It fortified the policy which requires that the government shall not be impeded in the regular procedure adopted by the Congress for the important function of collecting the revenues required to maintain the government.

In Cheatham et al. v. U. S. (1875) 92 U. S. 85, at page 88, 23 L. Ed. 561, Mr. Justice Miller wrote:

"All governments, in all times, have found it necessary to adopt stringent measures for the collection of taxes, and to be rigid in the enforcement of them.

"These measures are not judicial; nor does the government resort, except in extraordinary cases, to the courts for that purpose. The revenue measures of every civilized government constitute a system which provides for its enforcement by officers commissioned for that purpose. In this country, this system for each State, or for the Federal government, provides safeguards of its own against mistake, injustice, or oppression, in the administration of its revenue laws. Such appeals are allowed to specified tribunals as the lawmakers deem expedient. Such remedies, also, for recovering back taxes illegally exacted, as may seem wise, are provided. In these respects, the United States have, as was said by this court in Nichols v. United States, 7 Wall. 122 [19 L. Ed. 125], enacted a system of corrective justice, as well as a system of taxation, in both its customs and internal-revenue branches. That system is intended to be complete. In the customs department it permits appeals from appraisers to other appraisers, and in proper cases to the Secretary of the Treasury; and, if dissatisfied with this highest decision of the executive department of the government, the law permits the party, on paying the money required, with a protest embodying the grounds of his objection to the tax, to sue the government through its collector, and test in the courts the validity of the tax.

"So also, in the internal-revenue department, the statute which we have copied allows appeals from the assessor to the commissioner of internal revenue; and, if dissatisfied with his decision, on paying the tax the party can sue the collector; and, if the money was wrongfully exacted, the courts will give him relief by a judgment, which the United States pledges herself to pay.

"It will be readily conceded, from what we have here stated, that the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues.

"If there existed in the courts, State or National, any general power of impeding or controlling the collection of taxes, or relieving the hardship incident to taxation, the very existence of the government might be placed in the power of a hostile judiciary. Dows v. City of Chicago, 11 Wall. 108 [20 L. Ed. 65]. While a free course of remonstrance and appeal is allowed within the departments before the money is finally exacted, the general government has wisely made the payment of the tax claimed, whether of customs or of internal revenue, a condition precedent to a resort to the courts by the party against whom the tax is assessed. In the internal-revenue branch it has further prescribed that no such suit shall be brought until the remedy by appeal has been tried; and, if brought after this, it must be within six months after the decision on the appeal. We regard this as a condition on which alone the government consents to litigate

the lawfulness of the original tax. It is not a hard condition. Few governments have conceded such a right on any condition. If the compliance with this condition requires the party aggrieved to pay the money, he must do it. He cannot, after the decision is rendered against him, pro-, tract the time within which he can contest that decision in the courts by his own delay in paying the money. It is essential to the honor and orderly conduct of the government that its taxes should be promptly paid, and drawbacks speedily adjusted; and the rule prescribed in this class of cases is neither arbitrary nor unreasonable."

In the State Railroad Tax Cases, 92 U. S. 575, at page 613, 23 L. Ed. 663, decided at the same term of court, Mr. Justice Miller reiterated: "The government of the United States has provided, both in the customs and in the internal revenue, a complete system of corrective justice in regard to all taxes imposed by the general government, which in both branches is founded upon the idea of appeals within the executive departments. If the party aggrieved does not obtain satisfaction in this mode, there are provisions for recovering the tax after it has been paid, by suit against the collecting officer. But there is no place in this system for an application to a court of justice until after the money is paid."

And then continued: "That there might be no misunderstanding of the universality of this principle, it was expressly enacted, in 1867, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.' Rev. Stat. § 3224 [26 USCA § 154]. And though this was intended to apply alone to taxes levied by the United States, it shows the sense of Congress of the evils to be feared if courts of justice could, *in any case,* interfere with the process of collecting the taxes on which the government depends for its continued existence. It is a wise policy. It is founded in the simple philosophy derived from the experience of ages, that the payment of taxes has to be enforced by summary and stringent means against a reluctant and often adverse sentiment; and to do this successfully, other instrumentalities and other modes of procedure are necessary, than those which belong to courts of justice."

Judicial exceptions have in recent years been recognized in a strictly limited class of cases involving extraordinary and exceptional circumstances. Miller v. Standard Nut Margarine Co. of Florida, 284 U. S. 498, 52 S. Ct. 260, 76 L. Ed. 422; Hill v. Wallace, 259 U. S. 44, 42 S. Ct. 453, 66 L. Ed. 822; Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061.

Plaintiffs claim that the facts in this case bring it within the exception for the following reasons:

On July 13, 1935, the Circuit Court of Appeals, First Circuit (by a divided court), in the case of William M. Butler v. United States, 78 F.(2d) 1, in effect held that the Agricultural Adjustment Act was unconstitutional, and since that decision the various District Courts have issued upwards of 350 restraining orders against the enforcement of the taxing provision of said act; that domestic producers have been selling their merchandise at a price which does not include any processing tax, especially in the New England States, where plaintiffs' main competitors are located, so that plaintiffs are faced with two alternatives: (a) Not to pay the tax and permit their merchandise to remain in the custody of the collector until the final determination of the validity of the Agricultural Adjustment Act; (b) to pay the tax and release the goods from the custody of the collector.

To accept the first alternative, the plaintiffs allege, would keep tied up more than $30,000 which they have paid for the merchandise; finance charges would continue to grow; storage charges would pile up; the goods would deteriorate; insurance premiums would accumulate; and the value of the merchandise would fluctuate; and before a final determination of the constitutionality of the act the plaintiffs would be ruined financially—i. e., the banks may foreclose their security and wipe the plaintiffs out.

The other alternative would compel the plaintiffs to sell below cost to meet competition and to institute a multiplicity of suits to recover the tax if it should be entitled to do so, although plaintiffs fear Congress may legislate to prevent such recovery.

Allegations of the unconstitutionality of the statute do not justify the relief sought. Bailey v. George, 259 U. S. 16, 42 S. Ct. 419, 66 L. Ed. 816; Dodge v. Osborn, 240 U. S. 118, 36 S. Ct. 275, 60 L. Ed. 557; Snyder v. Marks, 109 U. S. 189,

828

3 S. Ct. 157, 27 L. Ed. 901. It is reported that more than 1,100 actions have been instituted and upwards of 500 restraining orders have been issued against the collection of the processing tax. But, so far as I am aware, no determination has been made by any judge in the Second Circuit. Judge Martin in the Western District of Tennessee, in the case of La Croix v. United States (D. C.) 11 F. Supp. 817, held the act constitutional, and the Circuit Court of Appeals for the Ninth Circuit (by a divided court), in the case of Fisher Flouring Mills Co. v. Vierhus, Collector of Internal Revenue, 78 F.(2d) 889, refused to enjoin the payment of the tax pending hearing of the appeal in October. Other District Judges, notably in North Carolina, where the output of textiles is comparable in quantity to New England, have refused to pass upon the constitutionality of the act but have granted injunctions upon the condition that the amount of the tax be paid into the registry of the court, and similar procedure was recently approved by the Circuit Court of Appeals in the Sixth Circuit in nine pending cases in which the court directed the payment of taxes into a designated national bank.[1]

The Supreme Court has shown great reluctance in declaring acts of Congress unconstitutional. The duty is one of great delicacy, and this court has the firm conviction that it is one to be performed only where the repugnancy is clear and the conflict irreconcilable. Every doubt should be resolved in favor of the constitutionality of the statute.

In Phillips v. Commissioner, 283 U. S. 589, at pages 595, 596, 51 S. Ct. 608, 611, 75 L. Ed. 1289, Mr. Justice Brandeis, delivering the opinion of the court, said: "The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. * * * Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action alleged to be illegal may be obtained promptly by the writ of habeas corpus * * * · the statutory prohibition of any

'suit for the purpose of restraining the assessment or collection of any tax' postpones redress for the alleged invasion of property rights if the exaction is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue."

I am aware of the distinction pointed out that the act under consideration provides that the use of the tax imposed when collected be for the benefit of a class as distinguished from the purpose of other tax measures where the revenue derived therefrom is intended for the support of the government. I am mindful also that, on the same day that the United States Supreme Court decided the Child Labor Tax Case unconstitutional, it held that an injunction could not issue enjoining the collection of an unconstitutional tax. Bailey v. George, 259 U. S. 16, at page 20, 42 S. Ct. 419, 66 L. Ed. 816, wherein Mr. Chief Justice Taft, said: "The averment that a taxing statute is unconstitutional does not take this case out of the section. There must be some extraordinary and exceptional circumstance not here averred or shown to make the provisions of the section inapplicable. Dodge v. Brady, 240 U. S. 122, 126, 36 S. Ct. 277, 60 L. Ed. 560. In spite of their averment, the complainants did not exhaust all their legal remedies. They might have paid the amount assessed under protest and then brought suit against the collector to recover the amount paid with interest. No fact is alleged which would prevent them from availing themselves of this form of remedy."

I do not feel that the plaintiffs have established such extraordinary and exceptional circumstances as to come within the stated exception. But, in any event, I would be unwilling to accept a surety company bond in this instance. If there should be a general disposition to ignore the provisions of R. S. § 3224 (26 USCA § 154) and consider all similar applications to that of the plaintiffs an exception thereto and the injunctive relief prayed for were granted upon the filing of a bond, then, should the constitutionality of the act be upheld, much the same situation might exist as developed with respect to guaranteed mortgage certificates upon which the guarantor companies defaulted because the sum total of their lia-

---

[1] No opinions filed.

bilities was many times greater than their assets and rendered them insolvent in consequence.

Plaintiffs have an adequate remedy at law (R. S. § 3226, as amended by Revenue Act 1932, § 1103 (a) tit. 26 USCA § 156) by an action to recover taxes illegally paid. Section 267 of the Judicial Code (28 USCA § 384) provides: "Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

■ Plaintiffs' fear that there will be no moneys available to refund the tax if the act is held unconstitutional is beyond the pale of consideration (New York v. Illinois, 274 U. S. 488, 47 S. Ct. 661, 71 L. Ed. 1164; McChord v. Louisville & N. R. Co., 183 U. S. 483, 22 S. Ct. 165, 46 L. Ed. 289), as is also the contention that Congress might legislate against the recovery of such tax if paid (Untermeyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645).

Motion denied. Settle order on notice. The motion of the government to dismiss the bill will be granted.