RICO et al. v. SNIDER et al.

(Circuit Court, N. D. California. January 31, 1905.)

No. 13,681.

1. INJUNCTION—RESTRAINING LEGISLATIVE ACTION OF MUNICIPAL BODY—POWERS OF COURT.

A court of equity is without power to interfere by injunction to prevent legislative action by a municipal body, unless the proposed legislation is beyond the scope of its corporate power, and its passage would work irreparable injury. Where it is within the powers vested in the legislative body, the possible consequences of one course of action cannot be set up as a basis of equity interposition before any action at all has been taken.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Injunction, § 154.]

2. SAME—DIVISION OF RECLAMATION DISTRICT IN CALIFORNIA—RESTRAINING ACTION BY BOARD OF SUPERVISORS.

Pol. Code Cal. §§ 3446–3493½, relating to the reclamation of swamp lands, having, inter alia, vested boards of supervisors with power to divide reclamation districts where the land therein has not been reclaimed, the question of fact whether the lands of a district have been reclaimed, arising on a petition for a division of the district, is one within the jurisdiction of the board, and to be primarily determined by them; and a court of equity is not authorized to determine it in advance of their action, and thereupon to enjoin them from exercising their statutory functions.

In Equity. On motion for preliminary injunction.

Complainants, who are citizens of Portugal, farmers and landowners in the state of California, pray for an injunction against the respondents, as individuals, and also as members of the board of supervisors of the county of Yolo, state of California, to restrain them from considering or acting upon a petition of respondent Glide praying for the formation or organization of a certain swamp-land reclamation district, referred to in the petition, or from taking any action whatever in the premises, and that the respondent Glide be restrained from taking any action in the matter of the division of a certain reclamation district or the formation of an independent reclamation district, or from taking or interfering with the levees of a certain reclamation district (No. 307). Complainants allege that the land concerning which this action is brought is what is commonly known as "swamp land," but that by the erection of certain levees and pumping plants the lands have been reclaimed. It is alleged that the lands are situated in Reclamation District No. 307 of the state of California, said reclamation district having a board of trustees, and having been organized pursuant to the laws of the state of California in 1877; that various assessments have been made upon the landowners within the district for building levees; that the said district is provided with a levee running on its northerly and westerly sides, and known as "Babel Slough Levee," and joining with the Sacramento River levee, and also by a levee along the Sacramento river to the southeastern portion of said district, and then by a cross-levee, and that said levees have been constructed for more than 10 years; that there is a pumping plant; that there are 70 landowners in the district; that the natural trend of the lands is in a southerly direction; that very large sums of money have been spent, through the board of trustees, for strengthening the levees; and that, by reason of the expenditures and the improvements, all the lands in the district have been fully reclaimed, and been in crops; that the Babel Slough levee forms a natural barrier and protection against flood waters; and that the lands, by the lapse of ages, have become hard and compact. It is alleged that a certain levee along the Sacramento river forms a natural barrier against flood waters, and a firm foundation for the erection of levees,

and that the boundaries of the reclamation district consist of the natural barrier formed by the slough levee and by the levee along the Sacramento river, improved by the expenditure of money, and also the back levee connecting same, constructed by the landowners of the district, and that all of the lands of Reclamation District No. 307 are capable of reclamation in but the one mode described, and that, if it were not for the maintenance and protection of all the levees of the district, the lands would again become swamp and overflowed, and the property of the complainants would become ruined and valueless. It is alleged that certain assessments were made to reclaim the lands, and that large sums were collected; that the respondent Glide is the owner of certain lands situated in Reclamation District No. 307, and that his lands are protected from overflow by the boundaries and levees of the district, as built and erected by the complainants and their predecessors; that Glide's lands are traversed by ditches in said district, and that the waters are let down into the main ditch owned and controlled by the district, and are thereupon pumped into the Sacramento river; that Glide's lands are not capable of independent reclamation, but have been fully reclaimed by the district reclamation works. It is then alleged that the other respondents are members of the board of supervisors of the county of · Yolo; that one of them (Snider) is brother-in-law to Glide, and that Glide has not contributed to reclaim his lands, except as a landowner in said reclamation district, but that, notwithstanding this, Glide has made a petition praying that certain lands of his be set apart into a separate reclamation district; and that the supervisors will set off the lands belonging to Glide into a separate district, and will transfer to Glide the property of the district, namely, the levees and canals and ditches on Glide's land, and deprive the complainants of the use and benefit thereof, and of the protection afforded by certain levees, and forming part of the continuous system of reclamation works of the district. It is alleged that no notice was given by Glide before the filing of his petition, and that the board of supervisors, without hearing testimony, arbitrarily agreed to vote for the petition of Glide, and to separate his lands from the other lands of Reclamation District 307, and that it agreed to convey·to him that portion of the Babel Slough fronting on his premises and certain other portions of levees, and to deprive complainants of their rights in such levees, and, unless enjoined, they will make an order allowing Glide to use as his sole and separate property certain levees, to the great damage of the complainants; that if the supervisors do as they threaten to do, and if thereby they deprive Reclamation District No. 307 and the lands therein of the protection of said levees, it will be necessary to build other levees at great cost; and that it will be impossible to build a barrier in a certain place, owing to the fact that the southern boundary of Glide's land is what is known as "reclaimed tule land," and no foundation could be obtained. It is further alleged that Snider is disqualified from acting by·reason of his relationship to Glide, but, notwithstanding this, he will vote in favor of granting Glide's petition. It is alleged that in 1877, when the reclamation district was formed, the predecessors in interest of Glide agreed to the formation of the district, and that it was decided then that all the lands were capable of reclamation in but one mode, and that the action of the supervisors had at that time has never been modified or amended, and that Glide was one of the trustees for the reclamation district for many years, and participated in requests for assessment, and in the collection of certain moneys to carry on reclamation work, and that the defendants now intend and threaten to deprive these complainants of their interest in the levees to be given to Glide; that all of the complainants' lands are highly productive, and have a rental value of at least $2,500 per annum, but that, if an order of separation should be made, their lands will be ruined, and the loss they will sustain will be $16,000; that the damages cannot be compensated for in money, and can only be prevented by the interposition of a court of equity; and that, if the petition of Glide should be granted, complainants and other landowners will be in constant litigation with Glide, and will be compelled to go to great expense, and will be greatly injured, because their lands will be placed in their original condition, as unreclaimed swamp and overflowed lands.

A temporary restraining order was issued by the court, and an order to show cause was made upon respondents, requiring them to show cause, if any they could, why a preliminary injunction should not issue as prayed for. Respondents other than Glide answered, denying that they had ever agreed with Glide or any one that they should set off the body of lands described in the petition of Glide, or that they would give or set off to Glide any portion of the Babel Slough levee or the Sacramento River levee, or that they would transfer to Glide any part of Reclamation District No. 307, or deprive complainants of the use and benefit thereof, or that they threatened or intended to set off said body of lands described in the petition of Glide into an independent reclamation district, and deny that they intend to make any order granting the petition of Glide, unless the evidence taken at the hearing shall fully justify such action. Respondents then allege that, when the petition of Glide was filed with the board of supervisors, due and legal notice was given by publication as required by law, and that a landowner appeared by counsel, requesting a continuance until May 8, 1903, and that before the petition came on for hearing the said landowner procured an injunction to be issued out of the superior court of the state of California, in and for the county of Yolo, enjoining these respondents from hearing or acting upon the petition of Glide. Respondents allege that they never at any time intended to act upon the petition of Glide without a full hearing of all parties interested, and that they did not intend and they never have intended to do any act or thing in relation to the granting of said petition, except to take such action as might be justified by the evidence to be introduced upon the hearing of said petition. Respondents then allege that in all respects they had acted in accordance with the laws of the state of California in respect to the hearing of the petition, and that they intend and have always intended to pursue the course and practice provided by law with reference to hearing the same.

Glide filed a separate answer. He denies that the lands of the complainants are now, or that they ever have been, reclaimed; denies that Reclamation District No. 307 has constructed levees around all the exterior boundaries of said district; and alleges that certain of the levees are only partly constructed, and that the portion surrounding his lands were constructed by him and his predecessors, and not by the reclamation district. He denies that for five years preceding the filing of the complaint each and every acre of said land has been reclaimed, or that crops have been produced during the said period, and alleges that in 1902 the lands were covered with water, which prevented the raising of crops. He alleges that on the southern boundaries of said reclamation district, and at a point where the south levee of the district is built, water reached a great depth during high water, and that the ground on which the levee is built is weak and unable to sustain the pressure of the water against the outside of the levee. He denies that the complainants are owners of any interest in any of the levees surrounding the district; denies that the Babel Slough levee forms a natural barrier for protection against flood water, and that the levee along the Sacramento river forms a barrier sufficient to restrain the flood waters; and denies that the lands of said reclamation district are capable of but one mode of reclamation. He denies that certain assessments were legally made upon the land in manner required by law; denies that the trustees have expended 50 per cent. of the assessments, or any sum, for the purpose of strengthening and widening said levees. Denies that his lands are not capable of independent reclamation, and denies that the same are reclaimed by the reclamation works of the district or otherwise. He denies that the supervisors of the county intend to set off lands belonging to him from said reclamation district, unless the facts ascertained at the hearing will fully justify such action. Respondent then sets up that on April 7, 1903, he presented his petition to the board of supervisors, and the said board fixed May 6, 1903, to hear the petition; that this notice was published for four weeks next preceding the date fixed for the hearing, as required by law; and that the affidavit of publication, in due form, was filed with the said petition by the clerk of the board of supervisors. Denies that there was any agreement on the part of the supervisors to vote for the petition, or to separate his lands from the other lands

in such reclamation district, or that they agreed to convey to him any portions of certain levees. Denies that the supervisors will separate his lands, or allow the formation of a reclamation district, unless the evidence introduced in support of his petition at the hearing shall fully and lawfully justify the making of said order. He denies that if the petition should be allowed, and a separate district formed, it will allow him to use and control, as his sole and separate property, the levees of the district, or any part thereof, or any levees situated in the said proposed district, but alleges that such levees as may be within the proposed district will belong to said district, and will be public property subject to the disposition of the state, and denies that action on the part of the board would subject the lands of the complainants to any greater danger from overflow than now exists. He denies that in 1877 or at any time the board of supervisors of the county made an order that all of the lands within said reclamation district were susceptible of but one mode of reclamation; denies that he ever received any money from any landowner or expended any money in constructing reclamation works in said district, but alleges that all collections were those of the board of trustees; denies all allegations of intent to deprive complainants of the benefit of reclamation works. As a separate defense, Glide alleges that the state courts have heretofore assumed jurisdiction of the subject-matter of this action, and are now maintaining jurisdiction thereof. He then sets up that an action was commenced in 1903 in the courts of the state to enjoin the board of supervisors from hearing or acting upon his petition, and that the hearing upon said petition has ever since been continued, and that on June 30, 1903, respondents herein appealed to the Supreme Court of the state of California from the order granting an injunction, and that the appeal is now pending in the said Supreme Court; that on June 25, 1904, one Dwyer, a landowner within said district, commenced action in the superior court of the state against respondents by filing a complaint, the allegations of which are substantially the same as those contained in the complaint herein, and that on June 24, 1904, the superior court of the county of Yolo, state of California, issued a writ of injunction restraining respondents from acting upon the petition of said Glide, other than to continue the hearing thereof, and that said injunction is now in force, and that respondents do not intend to do anything concerning the petition of Glide until the courts of the state have finally decided the case upon its merits.

The complainants filed certain affidavits which were read at the hearing before the court. One was made by J. C. Pierson, a civil engineer, wherein his professional opinion was given to the effect that all the lands of the district had been reclaimed, and that, if the petition of Glide were granted, great injury would be done to the lands of the complainants. The affidavits of the trustees of the reclamation district were also filed. Affiants therein also say that, for reasons which are specified in their affidavits, the granting of the petition of Glide would greatly damage the value of the lands of these complainants, and that many lawsuits would result, and that the reclamation, which is now full and complete, would be destroyed and rendered incomplete and incapable of completion if the lands of Glide should be segregated as sought in the petition of Glide. The affidavit of J. C. Franks was filed. Affiant states that he is experienced in the construction of levees for purposes of protecting swamp lands from overflow, and that he has examined the levees in Reclamation District No. 307, and that they are amply sufficient to protect the lands from overflow, and that he has so reported that fact to one of the trustees of the district, and that the trustees employed him to widen and heighten certain levees, and that he performed the work and made them durable and permanent, and that the lands of the district were and have been fully reclaimed.

The respondents filed an affidavit of P. N. Ashley, a civil engineer and surveyor, and county surveyor of the county of Yolo, state of California. He states that he is familiar with the lands embraced within the reclamation district, and the levee and works thereon; that some years ago he had made certain surveys and estimates for the reclamation district; and that the board of trustees adopted his report, and employed affiant as a civil engineer to superintend the works of reclamation, but that the board of trustees

thereafter did not pursue the plan he had recommended, but followed a radically different one. Affiant attached a map to his affidavit, illustrating the exterior boundaries of the district described in the petition filed by Glide, and also the construction of levees as indicated upon the map and indicated in Glide's petition. Affiant says that it would not be very difficult to build a levee along the south boundary of the proposed new district; that a firm foundation could be had, and that certain levees in the present reclamation district are a constant menace to the lands of the district, for the reason that Babel Slough levee along Glide's lands is not large enough to prevent the high waters from overflowing said district. He avers that the lands described in the petition of Glide are capable of independent reclamation, and he expresses the opinion that the lands contained in the reclamation district have not been fully reclaimed. A counter affidavit by Mr. Pierson is also filed, wherein he disputes the professional statements and opinions advanced by Mr. Ashley.

Devlin & Devlin and Olney & Olney, for complainants.

A. L. Shinn and Arthur C. Huston, for defendants.

HUNT, District Judge (after stating the facts). The reclamation of swamp lands is a public work, control over which is vested in the Legislature of the state. Hagar v. Supervisors, 47 Cal. 222; In re Madera Irrigation District, 92 Cal. 313, 28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106. The Legislature has delegated to the boards of supervisors of the various counties power to create and to divide reclamation districts for the purpose of promoting such reclamation. The procedure is prescribed by the Political Code of the state of California. Williams v. Supervisors, 65 Cal. 160, 3 Pac. 667; People v. Levee Dist. No. 6, 131 Cal. 30, 63 Pac. 676; Pol. Code Cal. §§ 3446 to 3493½.

The method of forming reclamation districts is begun by petition of the landowners, and notice, followed by a hearing by the board of supervisors, and finding. The management of the districts when formed is in boards of trustees, public agencies, with general supervision in the boards of supervisors. Where lands have not been reclaimed, the boards of supervisors have power to divide the district. The landowners themselves in certain instances may form a district (section 3472) without trustees and without any by-laws. Such a district respondent seeks to establish. His petition filed with the board of supervisors contained all that the law required it should contain. Due notice of the hearing of such petition was given. By the law the board of supervisors acquired jurisdiction to act upon respondent's petition.

Complainants contend that the board of supervisors have no jurisdiction because the lands are reclaimed, and that on this account there is no power to consider or grant respondent's petition. Defendants deny that the lands are reclaimed. To hold that the lands are reclaimed would be to pass upon the disputed facts of the case. It would not be proper at this time. It would, in effect, be to control the action of the board of supervisors by injunction. It does not appear that the board is about to act beyond the scope of its lawful powers. The doctrine which seems to me to be applicable has been well expressed by Judge Deady in the following language:

"The authorities are not uniform on the question of the power of a court of equity to restrain a municipal corporation in the exercise of its legislative functions. The more modern, and I think the better, doctrine is that the

court ought not to interfere by injunction with legislative action of a municipal corporation, unless the proposed legislation is beyond the scope of the corporate powers; and its passage would, under the circumstances, work irreparable injury. After the passage of such an ordinance, its enforcement, if attended with such injury, may be enjoined. Murphy v. East Portland (C. C.) 42 Fed. 310; Alpers v. City and County of San Francisco (C. C.) 32 Fed. 503."

The case, in its present state, is one where, power to act having been delegated to the board of supervisors, the wisdom or need for the exercise of power one way or another are questions which rest primarily within the appropriate jurisdiction of such board, and ought not to be decided in advance by the court. It is the duty of the board alone to ascertain the fact whether the land is or is not reclaimed, and thereafter to exercise a judgment and discretion as may be proper and expedient. But as said, the ascertainment of the fact rests with the board, and does not affect their jurisdiction. People v. Hagar, 66 Cal. 59, 4 Pac. 951; Board of Directors v. Tregea, 88 Cal. 335, 26 Pac. 237. The supervisors deny that they have agreed to find in favor of Glide, petitioner before the board. They have not yet acted, and the presumption is that they will do their duty.

Under my view of the case as it is presented to me, it is not necessary to decide the question whether, if the division of the district is made, it will impair the obligation of a contract between the state and the complainants, and affect the property rights of the complainants in the lands which might be set apart. The duty of considering and acting being upon the board, the possible consequences of one course of action cannot be set up as the basis of equity interposition before the board has acted at all. McChord v. Louisville, 183 U. S. 495, 22 Sup. Ct. 165, 46 L. Ed. 289. Whether, after the board has acted, the execution of its acts can be restrained, is a question not necessarily calling for adjudication at this time.

Reserving any opinion upon the important questions which may hereafter arise, these suggestions occur to me: Did not the complainants take their land subject to the power of the state to promote its reclamation as the lawmaking power might regard as best to carry out such reclamation? Are not complainants' rights in subordination to the paramount title in and right of the state to make reclamation of the land? Is not the state under a duty to the government of the United States to perform this obligation? Are not the levees property of the state, subject to use for purposes of reclamation as may seem best to the legislative power, or to the board to which the Legislature has delegated power? There seems to be force in the reasoning which leads to affirmative answers to these questions, provided that the use of the levees is always for reclamation purposes. If there were a diversion of such property to another purpose than reclamation, other questions would be raised, and doubtless injunction would lie to prevent diversion from the trust to which the property can only be lawfully applied; or it may be that if, after the division of a district, the execution of the act will work great and irreparable injury to the lands of the older districts, such as overflowing, injunction will lie.

But as the record does not make a case now justifying injunction, it is ordered that the petition of the complainants be denied.