[No. A038728. First Dist., Div. Four. July 20, 1988.]

MARIN MUNICIPAL WATER DISTRICT, Cross-complainant and Respondent, v.
CITY OF MILL VALLEY, Cross-defendant and Appellant.

COUNSEL

Bagshaw, Martinelli, Corrigan & Jordan, Leland H. Jordan, Michael B. Samuels and Lawrence M. Reifurth for Cross-defendant and Appellant.

Thomas F. Keating, Jr., and Freitas, McCarthy, Bettini, MacMahon, Freitas & Keating for Cross-complainant and Respondent.

OPINION

CHANNELL, J.—A jury found against appellant City of Mill Valley and for respondent Marin Municipal Water District in an inverse condemnation action. The city appeals, contending that public property cannot be taken for purposes of inverse condemnation and that the district's franchise is not a compensable property interest. We affirm the judgment.

## I. FACTS

On December 9, 1983, Hillside Avenue in Mill Valley collapsed and slid onto two parcels owned by John T. Swayne. He filed an inverse condemnation action against respondent Marin Municipal Water District, alleging that the landslide was caused by its failure to properly maintain its water pipes. Later, he amended his complaint to add a similar cause of action against appellant City of Mill Valley, alleging that the slide was caused by its failure to maintain the roadway over the district's pipes. The district and the city settled with Swayne, each paying him $16,566.50, and Swayne dismissed his action. The city and the district cross-complained against one another, each seeking indemnification for its half of the settlement payment and seeking damages for its own loss resulting from the landslide. The parties stipulated the district suffered a loss of $17,242.89 while the city sustained $75,674 in damages, in addition to the settlement payment.

The city's motions for judgment on the pleadings[1] and for nonsuit were denied to the extent that they attacked the district's inverse condemnation theory. Although its cross-complaint was based on several theories of recovery, the district submitted the case to the jury on only one—inverse condemnation. The jury found for the district, awarding the stipulated amount of damages: $16,566.50 for the Swayne settlement and $17,242.89 for the district's own losses. The jury found against the city on its cross-complaint and awarded it no damages. Judgment was entered accordingly.

[1] The city's motion for judgment on the pleadings was treated as a demurrer.

## II. Inverse Condemnation of Public Property

 First, the city contends that public property may not be taken for purposes of inverse condemnation. The city argues that inverse condemnation actions are constitutionally based, while the law of eminent domain—direct condemnation—is based on statute. Because it finds no constitutional authorization for the taking of public property in an inverse condemnation context, it reasons that no such cause of action exists for a taking of public property.

 In many respects, the law of inverse condemnation parallels that of eminent domain. Both the state and federal Constitutions require just compensation for takings of "private property." (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 19; see *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith* (1980) 449 U.S. 155, 160 [66 L.Ed.2d 358, 364, 101 S.Ct. 446] [federal just compensation clause applies to states].)[2] Inverse condemnation and eminent domain are both procedural devices for insuring that these constitutional provisions are not violated. (*Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 43 [104 Cal.Rptr. 1, 500 P.2d 1345]; see *McMahan's of Santa Monica* v. *City of Santa Monica* (1983) 146 Cal.App.3d 683, 692 [194 Cal.Rptr. 582] [inverse condemnation is constitutional remedy].) Each is a different manifestation of the same governmental power, based on the same constitutional provisions. (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 67 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208].) In many cases, an inverse condemnation action is merely an eminent domain proceeding initiated by the property owner rather than the condemner. The principles which affect the parties' rights in both actions are the same. (*Breidert* v. *Southern Pac. Co.* (1964) 61 Cal.2d 659, 663, fn. 1; [39 Cal.Rptr. 903, 394 P.2d 719] *McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at p. 690.)[3]

 Under this analysis, if the city was legally authorized to take district property by direct condemnation, the district may state an inverse condemnation cause of action. In California, the law of eminent domain permits a public entity with the power to condemn to take property already in public use for another, more necessary public use. (Code Civ. Proc., § 1240.610.)[4] Statutes specifically authorize the taking of public utility

---

[2] The Fifth Amendment to the United States Constitution provides: ". . . [N]or shall private property be taken for public use, without just compensation." Article I, section 19 of the California Constitution provides: "Private property may be taken or damaged for public use only when just compensation . . . has first been paid to . . . the owner. . . ."

[3] "It is 'inverse' because the damaging or taking normally precedes the payment of compensation." (Condemnation Practice in California (Cont.Ed.Bar 1973) Inverse Condemnation, § 13.1, pp. 332-333.)

[4] All statutory references are to the Code of Civil Procedure.

franchises. (§ 1240.110.) The California Supreme Court recognizes that the city's right to use its streets is paramount to a utility's right to use them. (*Southern Cal. Gas Co.* v. *City of L. A.* (1958) 50 Cal.2d 713, 717-718 [329 P.2d 289].) Therefore, because the city could take the district's water lines in an exercise of its power of eminent domain, the district may state a cause of action for inverse condemnation against the city when it does not compensate the district for that taking.

■ However, the case before us does not present a city that failed to compensate for an intentional taking, but a public entity that has caused unintentional physical damage to property. In this context, the law of inverse condemnation is not simply the mirror image of the law of eminent domain. Despite the constitutional basis of inverse condemnation, these unintentional damage cases are based primarily on principles of tort and property law. (See *McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at p. 692 [damage to private property]; see also Van Alstyne, *Inverse Condemnation: Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 438.) Liability in inverse condemnation for unintended physical damage is proper when the damage resulted from a public entity's maintenance and use of a public improvement. (*McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at pp. 693-694.) When the public entity fails to construct or maintain its improvement properly, it takes a calculated risk that damage to private property may occur. (*Id.,* at p. 697; see Van Alstyne, *Inverse Condemnation: Unintended Physical Damage, supra,* 20 Hastings L.J. at pp. 491-492.) If damage to private property results, it is proper to require the entity that took this risk to bear the loss when damage occurs. (*McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at pp. 697-698.) ■ We see no reason why these principles should not apply to compensate for damage to property owned by another public entity. To paraphrase the California Supreme Court, a public entity whose property has been damaged by another public entity suffers no less a taking merely because of its public entity status. (See *Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 866, cert. den. 475 U.S. 1017 [218 Cal.Rptr. 293, 705 P.2d 866].)

The city contends that this result runs counter to the purpose of inverse condemnation and eminent domain to socialize the burden of loss—to afford relief to the landowner in cases in which it is unfair to ask him or her to bear a burden that should be borne by society. (See Mandelker, *Inverse Condemnation: The Constitutional Limits of Public Responsibility* (1966) 1966 Wis. L. Rev. 3, 8.) It argues that if the district can recover under an inverse condemnation theory, the loss distribution will decrease—from countywide to citywide—rather than increase, contrary to the cost-spreading policy of condemnation. We see two flaws in this argument. First, if

adopted, it would make the availability of an inverse condemnation cause of action dependent on the relative sizes of the parties—that is, a smaller entity could bring such an action against a larger one, but not vice versa. Reason suggests that the law have a more uniform approach to the issue of whether public entities may state a cause of action in inverse condemnation. Second, the city's analysis overlooks a basic fairness argument. One public entity should not be allowed to take property belonging to another public entity without compensation. Funds collected by one public entity for one purpose should not be thus appropriated, disrupting that entity's finances. (See *State v. Salt Lake City Public Board of Education* (1962) 13 Utah 2d 56, 58-59, [368 P.2d 468, 470] [road authority must compensate school district for school it condemned].) Therefore, we are satisfied that the district stated a cause of action in inverse condemnation for unintentional physical damage to its property.

### III. FRANCHISE INTEREST

■ In the alternative, the city contends that the district's franchise interest cannot support this action. ■ The district's right to lay and maintain pipes under city streets is a franchise. (*State of California* v. *Marin Mun. W. Dist.* (1941) 17 Cal.2d 699, 703-704 [111 P.2d 651]; *San Jose Gas Co.* v. *January* (1881) 57 Cal. 614, 616.) Under the law of eminent domain, a franchise is a property interest which may be taken. (§§ 1235.125, 1235.170, 1240.110; *City of Oakland* v. *Oakland Raiders, supra,* 32 Cal.3d 60, 66-68; see *The West River Bridge Company* v. *Dix et al.* (1848) 47 U.S. 507, 533 [12 L.Ed. 535, 545-546]; see also 1 Nichols on Eminent Domain (rev. 3d ed. 1985) § 2.1[2], pp. 2-8 to 2-9.) ■ Inverse condemnation is available to recover for loss of or damage to such a property interest. (See *Eli* v. *State of California* (1975) 46 Cal.App.3d 233, 235 [120 Cal.Rptr. 63]; *Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50, 53 [67 Cal.Rptr. 665]; see also *Northeast Sacramento etc. Dist.* v. *Northridge Park etc. Dist.* (1966) 247 Cal.App.2d 317, 322-323 [55 Cal.Rptr. 494].)

However, the city points out that under established law, a municipality-franchisor may compel a public utility-franchisee to relocate its lines without compensation to make way for "a proper governmental use of the streets." (*Southern Cal. Gas Co.* v. *City of L. A., supra,* 50 Cal.2d at p. 716.) The city reasons that the district, as its franchisee, may not bring an action for inverse condemnation against it. We find this case law distinguishable. The case at bar does not involve the improvement of a street, but its destruction. The rationale of the cited case law is based on the city's paramount right to improve streets for public benefit. (*Id.,* at p. 718; see *State of California* v. *Marin Mun. W. Dist., supra,* 17 Cal.2d at p. 706 [weighing of public benefit against utility's burden].) This rationale does not apply in the

context of the destruction of a portion of the city's street; therefore, the rule enunciated by this case law does not apply to this case, either. The district's franchise interest is sufficient to support its inverse condemnation cause of action against the city, its franchisor.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied August 9, 1988, and appellant's petition for review by the Supreme Court was denied October 29, 1988.