

# SUPREME COURT OF MISSOURI
## en banc

THE METROPOLITAN ST. LOUIS   )
SEWER DISTRICT,   )
   )
      Appellant,   )
   )
v.   )      No. SC94831
   )
THE CITY OF BELLEFONTAINE   )
NEIGHBORS,   )
   )
      Respondent,   )
   )
SHERRELL CONSTRUCTION,   )
INC., et al.,   )
   )
      Defendants.   )

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
#### The Honorable Mark D. Seigel, Judge

*Opinion issued January 12, 2016*

The Metropolitan St. Louis Sewer District ("MSD") appeals the trial court's judgment dismissing its claims of inverse condemnation, trespass and negligence against the city of Bellefontaine Neighbors for damage to MSD sewer lines allegedly caused in the course of a city street improvement project. MSD argues that it can bring a claim under article I, section 26 of the Missouri Constitution for inverse condemnation alleging the City unintentionally took its property without just compensation. This Court disagrees. Article I, section 26 provides constitutional protection against the taking of

"private" property without just compensation. It is undisputed that the sewer pipes that MSD alleges were inversely condemned are public property. This Court rejects MSD's argument that the word "private" was intended to encompass "public" property as well. The meaning of the word "private" is unambiguous, and the trial court did not err in giving the provision its plain meaning and dismissing the inverse condemnation claim.

MSD alternatively argues that the trial court erred in holding that sovereign immunity barred it from asserting claims for trespass and negligence against the City because the City has not identified a previous case in which sovereign immunity has been found to apply in suits between governmental entities. This Court rejects MSD's argument. Sovereign immunity is the rule, not the exception. Unless it is waived or a statutory or recognized common law exception, such as consent, is applicable, sovereign immunity applies. No statutory or common law exception applies here, and the federal and California cases on which MSD relies are distinguishable. The judgment is affirmed.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

MSD was formed in 1954 following voter approval pursuant to article VI, section 30 of the Missouri Constitution. MSD provides wastewater treatment and sewerage facilities for the St. Louis city and county metropolitan area. In 2009, the City of Bellefontaine Neighbors, a municipality in St. Louis County, initiated a street improvement and resurfacing project and hired Sherrell Construction Inc. as general contractor for the project and P.H. Weis & Associates as engineer. Sherrell hired Lift Rite Inc. to conduct mudjacking services. Mudjacking is a process of pumping a concrete-like slurry underneath the streets to fill the voids. When Lift Rite pumped the

concrete slurry under the streets, some of the slurry was pumped into and hardened inside MSD's sewer lines, allegedly requiring MSD to replace the lines to make them usable again. The alleged damage was $66,860.25.

In October 2013, MSD filed suit. In its original petition, MSD asserted a claim of trespass and negligence against Sherrell, Weis and Lift Rite and a claim of inverse condemnation against the City. The City moved to dismiss for failure to state a claim, arguing that inverse condemnation applies only in the case of a taking of private property, not public property, and that MSD failed to allege any affirmative acts by the City that caused the damage. The trial court granted the City's motion to dismiss in April 2014.

MSD filed an amended petition again setting out a count for inverse condemnation against the City and added claims against the City of negligence and trespass, alleging it was the City's participation in and direction of the activities that damaged MSD's sewer lines.[1] The City again moved to dismiss, alleging that inverse condemnation does not

---

[1] MSD's amended petition claimed that the City's direction and participation included:
- Designating Weis as the City's representative to administer and supervise all aspects of the project, part of which included mudjacking services performed by Sherrell and Lift Rite;
- Participating in pre-construction conferences and weekly site meetings to schedule work and approve the use of equipment and procedures;
- Inspecting and approving work performed by Sherrell and Lift Rite;
- Directing the order and timing of work on the project;
- Coordinating with MSD and other utilities in an attempt to avoid causing problems to the sewer system and other utilities;
- Directing Sherrell on concrete specifications;
- Directing and/or providing input on Weis' and Sherrell's hiring practices;
- Responding to complaints from residents regarding the project; and

3

apply to public property and that sovereign immunity applied and had not been waived. Finding "no just reason for delay," the trial court entered judgment in favor of the City and certified the ruling for immediate appeal pursuant to Rule 74.01. The court of appeals transferred the case to this Court after opinion under Mo. Const. art. V, sec. 10.

## II.    STANDARD OF REVIEW

"The standard of review for a trial court's grant of a motion to dismiss is *de novo*." *Lynch v. Lynch, 260 S.W.3d 834, 836 (Mo. banc 2008).* The Court treats the facts contained in the petition as true and in the light most favorable to the plaintiff. *Id*. "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id*.

## III.    INVERSE CONDEMNATION

### A. Principles Governing Inverse Condemnation

Article I, section 26 of the Missouri Constitution provides "[t]hat private property shall not be taken or damaged for public use without just compensation." Condemnation is the proceeding by which a governmental entity takes private property. *State ex rel. Missouri Highway & Transp. Comm'n v. Anderson, 735 S.W.2d 350, 352 (Mo. banc 1987)* (superceded by statute on other grounds). Missouri statutes provide procedures through which just compensation for this taking is determined and paid in accordance

---

- Deciding whether to perform concrete "slab work."

4

with the principles set out in article I, section 26. *See, e.g., sections 523.010 to 523.215* [2] (governing condemnation proceedings); *sections 88.010 to 88.824* (governing a public entity's condemnation for public works). This Court also has adopted procedures governing condemnation in Rule 86. "Both the statutes and our rule contemplate a two-step process. First, the court must determine whether … the condemning authority complied with the conditions precedent to bringing the action ... [and] [s]econdly, the court must establish the landowner's damages from the taking." *State ex rel. Missouri Highway & Transp. Comm'n, 735 S.W.2d at 352.*

At times a public entity does not initiate condemnation proceedings but nonetheless intentionally or accidentally takes private property, such as when it damages private property or mistakes boundaries or property rights. In such cases, property owners may pursue claims for "inverse condemnation." "Inverse condemnation is not an alternative to proper condemnation, but a method of … assur[ing] that landowners receive just compensation for that which was taken." *Harris v. L.P. & H. Const. Co., 441 S.W.2d 377, 381 (Mo. App. 1969). Accord, State ex rel City of Blue Springs v. Nixon, 250 S.W.3d 365, 371 (Mo. banc 2008).*

## B. Inverse Condemnation Claim

Here, MSD claims that the City took its property accidentally when the City or its agents filled MSD sewer pipes with slurry during the mudjacking process, thereby

---

[2] Statutory citations refer to RSMo 2000 and RSMo Supp. 2013 unless otherwise indicated.

rendering the pipes unusuable.  It sued the City for just compensation for this damage under a theory of inverse condemnation.  The trial court dismissed MSD's inverse condemnation claim without issuing findings of fact or conclusions of law.  When a trial court does not indicate why it dismissed the petition, this Court presumes it was for one of the reasons stated in the motion. *Costa v. Allen, 274 S.W.3d 461, 462 (Mo. banc 2008).* Here, the City's motion alleged that article I, section 26 of the Missouri Constitution and Missouri statutes governing condemnation and inverse condemnation provide for just compensation only for the taking of private property and that these provisions do not entitle MSD to sue for inverse condemnation because MSD is seeking compensation for the taking of public property.

On appeal, MSD necessarily does not contest that it is a public entity,[3] that the property allegedly taken is the property of a public entity, and that article I, section 26 expressly provides only that "*private* property shall not be taken or damaged for public use without just compensation." (emphasis added).  But, MSD argues, this Court should interpret the words "private property" as used in article I, section 26 to include "public

---

[3] MSD was created pursuant to article VI, section 30 of the Missouri Constitution and is governed pursuant to its charter.  Section 30 of article VI relates to the city and county of St. Louis and the power "to establish a metropolitan district or districts for the functional administration of services common to the area included therein."  Such power is exercised by vote of the people on a plan prepared by a board of freeholders. *Mo. Const. art. VI, § 30(a).*  The MSD charter states "'[T]he District,' shall be a body corporate, a municipal corporation, and a political subdivision of the state, with power to adopt, use, and alter at its pleasure a corporate seal, sue and be sued, contract and be contracted with, and in other ways to act as a public corporation within the purview of this Plan, and shall have the powers, duties, and functions as herein prescribed." *Article I, § 1.010.*

6

property" that is damaged by other unrelated public entities, either by ignoring the word "private," by defining "private" to include "public," or by adding by implication the word "public" because there is no good policy reason why just compensation should not be provided to public entities whose property has been taken by another public entity when private entities are so entitled.

This Court rejects MSD's arguments. MSD cites no Missouri case that has interpreted the word "private" to include "public" in its meaning. Neither does it cite any instance in which a Missouri court has ruled that article I, section 26 applies to public as well as private entities whose property has been taken by another public entity. In effect, MSD asks this Court to act as a legislature or to add a provision to the constitution that is not there because it would be good public policy. But that is not a role this Court can undertake. *Independence-Nat'l Educ. Ass'n v. Independence Sch. Dist., 223 S.W.3d 131, 137 (Mo banc 2007)*. And, while MSD may be correct that the legislature would be free to extend the right to just compensation to it by statute, the legislature has not done so.

This Court must interpret article I, section 26's use of the term "private property" according to its plain meaning. Webster's Third New International Dictionary defines "private" as "belonging to or concerning an individual person, company or interest (~ property)." *WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1804, (3d ed. 1993)*. "Public" means "authorized or administered by or acting for the people as a political entity: government." *Id. at 1836*. These definitions unequivocally do not support reading the word "private" to include within its meaning the word "public." To the contrary, the

7

words are understood as antonyms.[4]

For these reasons, when presented with a similar issue, this Court declined to read the word "private" into an unambiguous constitutional provision that did not contain that word in *Independence-National Education Association v. Independence School District, 223 S.W.3d 131 (2007)*. This Court there was asked to construe the meaning of the word "employees" as used in article I, section 29, which states **"**employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

The defendant school district in *Independence* claimed that it was bad public policy for "public" employees to collectively bargain. It cited extrinsic evidence it said showed that the person who drafted and presented section 29 at Missouri's 1945 constitutional convention talked only about "private" employees when discussing this section. The school district, therefore, asked this Court to affirm the holding in an earlier case that even though the word "private" was not included in the constitutional provision, the Court would read the word "private" into the provision in question and interpret it for policy reasons as if it said "*private* employees … shall have the right to bargain collectively," *Id. at 133, 136-37*.

This Court unequivocally rejected the school district's argument. The constitutional language in article I, section 29 was unambiguous, this Court explained, so the Court necessarily was confined to reviewing the words of the provision itself in

---

[4] "**Private**, *antonyms* common, open, public" MERRIAM-WEBSTER'S COLLEGIATE THESAURUS *829 (2d ed. 2010)*. "**Public**, *antonyms* confidential, private, secret" *Id. at 841* (emphasis in original).

8

context rather than considering extrinsic evidence of the framers' intent. *Id. at 137.* This Court could no more add the adjective "private" in front of the word "employees" than it could add other words to the constitution, for "[t]he meaning of section 29 is clear and there is, accordingly, no authority for this Court to read into the Constitution words that are not there." *Id., citing Kearney Special Road Dist. v. County of Clay, 863 S.W.2d 841, 842 (Mo. banc 1993).* If the people meant something different in adopting the amendment than its plain meaning, this Court said, the people could follow the amendment process to change the law, but it is the people who adopt a constitutional amendment, and the Court "will not change the language the people have adopted." *Id.*[5]

Just as this Court could not read "private" into article I, section 29 in *Independence*, this Court has no authority to read the word "public" into article 1, section 26, or to interpret the word "private" contrary to its generally understood meaning. Indeed, this case is even clearer than *Independence,* for in that case the word "employees" had no adjective at all modifying it and this Court said it could not read the word "private" into such silence. But article I, section 26 affirmatively limits its reach to private property. The meaning of this language is plain. It does not give a public entity a constitutional right to just compensation for the taking of its property.

---

[5] The concurring opinion is incorrect in its belief that this Court is holding that it is never appropriate to consider the statements made by those proposing amendments during a constitutional convention or the historical context in which a provision was adopted. If a provision is ambiguous, consideration of such matters *is* appropriate. In *Independence School District*, as here, however, the words used have a plain and unambiguous meaning. In such a case, the debates of the convention can "neither add to nor subtract from the plain meaning of the constitution's words." *223 S.W.3d at 137.*

9

MSD's only countervailing argument is to cite two non-Missouri cases, one federal and one arising in California, to support its legal and policy arguments that a public entity should not be treated differently than private entities are treated under the Missouri Constitution. Neither supports this position.

As MSD notes, *United States v. 50 Acres of Land, 469 U.S. 24 (1984)*, holds that the term "private property" as used in the takings clause of the 5th Amendment to the *United States Constitution* encompasses all non-federal property, including both individually held and state and local government property. But the context of its discussion was an argument as to whether local governments should receive greater compensation than private landowners. *469 U.S. at 26-27.* *50 Acres of Land* determined they should not, for reasons not apposite here. In so doing, it cited *United States v. Carmack, 329 U.S. 230, 242 (1946),* for the point that the federal government's power of eminent domain is a matter of federal supremacy necessary to carry out its federal government function, so it follows the federal government owes just compensation "when it takes another's property for public use in accordance with the federal sovereign power to appropriate it." *Carmack, 329 U.S. at 241-42*.

But *Carmack* also specifically said its rationale *does not apply* when the taking is of public property within one state, for when "a sovereign state transfers its own public property from one governmental use to another, or when the Federal Government takes property from state ownership merely so as to put it to a federal public use for which the state already holds it in trust, *a like obligation does not arise to pay just compensation for*

10

*it*." *Carmack, 329 U.S. at 242, n. 12* (emphasis added).[6]

Other states accordingly have recognized that the rationale of *50 Acres of Land* does not require a state or local public entity to compensate another state or local public entity for the taking of its property (absent a constitutional or statutory provision expressly so providing). For instance, *City of Evanston v. Regional Transportation Authority, 559 N.E.2d 899, 905-06 (Ill. App. 1990)*, held that "there is no authority that private property within the meaning of the 5th Amendment includes the public property of a political subdivision taken by another political subdivision of the same state."

The Supreme Court of Georgia similarly rejected the relevance of *50 Acres of Land* to state proceedings, holding that a state constitutional requirement of just compensation for the taking of "private property" did not require just compensation for the taking of "public" lands in a state condemnation action because "[t]he relationship between the federal government and a state or a city is certainly different from the relationship between a state and a city." *Dep't of Transp. v. City of Atlanta, 337 S.E.2d 327, 334, n5 (Ga. 1985).*

This Court agrees. Both MSD and the City are public entities of the state of Missouri. The State has power within its own sphere to shift uses of public property and

---

[6] *Accord, Town of Bedford v. United States, 23 F.2d 453, 456-57 (1st Cir. 1927)* (just compensation does not apply to state taking public property because any tax burden caused by property shift from one public entity to another can be reallocated by the state, but compensation would be owed in case of federal taking of state or local property).

11

allocate costs. The decision whether to require just compensation for the taking of one public entity's property by another is for the people or the legislature, not for this Court. At this time no state constitutional provision or statute provides Missouri public entities with the right to just compensation for property taken by another Missouri public entity.[7]

The only other case cited by MSD, *Marin Mun. Water Dist. v. City of Mill Valley, 202 Cal. App. 3d 1161, 249 Cal. Rptr. 469 (Cal. App. 1988),* is even less relevant. *Marin* recognizes that California's constitutional provision requiring just compensation for the taking of "private property" by eminent domain does not apply to the unintentional taking of other public property in California. *Id. at 1165.* But, *Marin* said, compensation for such a taking is nonetheless required under California law because in California "the law of inverse condemnation is not simply the mirror image of the law of eminent domain. Despite the constitutional basis of inverse condemnation, these unintentional damage cases are based primarily on the principles of *tort and property* law." *Id. at 1165* (emphasis added). In other words, while calling the theory one of inverse condemnation, the California court said it really was basing its theory on tort and

---

[7] Neither can MSD claim a due process right was violated when it was denied just compensation, for it does not complain that it did not receive a hearing; its disagreement is with the law, not with the process under which that law was determined. Further, it has not shown that there is no rational basis to distinguish between condemnation of private versus public property, inasmuch as if both entities involved in a taking are public ones, then the taxpayers will bear the cost whichever public entity takes the loss. In any event, public entities are not persons, and the right to due process is given to persons, not other entities, under article I, section 10. *See City of Chesterfield v. Dir. of Revenue, 811 S.W.2d 375, 377 (Mo. banc 1991), and State ex rel. Brentwood Sch. Dist. v. State Tax Comm'n, 589 S.W.2d 613, 615 (Mo. banc 1979)* (both holding that municipalities and other political subdivisions are not protected by the due process clause).

property law, not the state constitutional just compensation provision. *Id.*

To the extent that *Marin* conflated the concepts of tort and constitutional law to turn inverse condemnation into a tort cause of action rather than a constitutional one, it is inconsistent with Missouri law. In Missouri, the right to sue for inverse condemnation arises solely from the state constitution. *Shade v. Missouri Highway & Transp. Comm'n, 69 S.W.3d 503, 510 (Mo. App. 2001), citing Heins Implement Co. v. Highway & Transp. Comm'n, 859 S.W.2d 681 (Mo. banc 1993), abrogated in part on other grounds by Southers v. City of Farmington, 263 S.W.3d 603, 614 n. 13 (Mo. banc 2008).* Like California, Missouri permits a public entity to recover in tort for damage to its property by another public entity. But it does so not through inverse condemnation but by considering whether a plaintiff has properly pleaded and proved a tort cause of action, including whether it has shown that sovereign immunity has been waived, an issue to which the Court now turns.

## IV. SOVEREIGN IMMUNITY APPLIES IN SUITS BETWEEN PUBLIC ENTITIES

MSD argues that even if it cannot sue the City for inverse condemnation of its publicly owned property, it can sue the City in negligence and trespass for that same conduct. MSD recognizes that if the City's allegedly tortious conduct occurred as part of a governmental non-ministerial function rather than in the course of a proprietary function, then sovereign immunity would shield it from tort liability if the City were sued by a private person or entity. *See, e.g., Southers, 263 S.W.3d at 609; accord, Junior College Dist. of St. Louis v. City of St. Louis, 149 S.W.3d 442, 446-49 (Mo. banc 2004)*

13

("Municipal corporations traditionally have had immunity, however, for those actions they undertake as a part of the municipality's governmental functions – actions benefiting the general public. Municipal corporations do not enjoy sovereign immunity in tort while performing proprietary functions"). But, MSD argues, sovereign immunity does not shield a public entity from liability for torts committed against another public entity. [8]

MSD cites no case or statutory authority for its argument that one public entity cannot claim sovereign immunity in a suit brought by another public entity. Instead, it argues that it could find no case stating affirmatively that sovereign immunity does apply in a suit between public entities in Missouri. Therefore, MSD argues, sovereign immunity must not apply between public entities. MSD's argument is premised on a misperception as to the nature of sovereign immunity.

Sovereign immunity is:

---

[8] MSD also argues that if sovereign immunity does apply between public entities, the protection is waived because the damage was caused in the course of the City carrying out a proprietary function. This Court does not need to decide whether the City's street improvement project was a proprietary function because MSD did not allege in its pleadings that the City's street improvement activities were propriety. MSD also did not assert a proprietary function exception below in its response in opposition to the City's first motion to dismiss and filed no response to the City's motion to dismiss the amended petition. To the contrary, MSD specifically raised only the claim that "[s]overeign immunity does not shield the City from liability for those acts because MSD is a public not private entity." It further averred specifically that "[u]pon information and belief, no other exception to sovereign immunity exists." While "averments of the petition are to be given a liberal construction," *Dallas v. City of St. Louis, 338 S.W.2d 39, 41 (Mo. 1960),* MSD did not plead that the City was acting in a proprietary capacity. It, therefore, cannot raise this claim on appeal for the first time. *Burke v. City of St. Louis, 349 S.W.2d 930, 933 (Mo. 1961)* ("[P]laintiff in this action should specifically allege, and by his proof show, facts permitting of a finding that the city was, at the time, acting in a proprietary capacity").

A judicial doctrine which precludes bringing suit against the government without its consent. Founded on the ancient principle that "the King can do no wrong," it bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived by statute or by necessary inference from legislative enactment.

*Black's Law Dictionary at 1396 (6th ed. 1990).*

Missouri courts have recognized the common law rule of sovereign immunity since 1821. *Southers, 263 S.W.3d at 609.* "The rule is that the state, by reason of its sovereign immunity, is immune from suit and cannot be sued in its own courts without its consent. … The respondent does not now have, and cannot acquire jurisdiction of the person of the state in the absence of a waiver by the state of its sovereign immunity and its consent to be sued." *State ex rel. Eagleton v. Hall, 389 S.W.2d 798, 801 (Mo. banc 1965).* In other words, sovereign immunity applies to the government and its political subdivisions unless waived or abrogated or the sovereign consents to suit. *Bush v. State Hwy Comm'n, 329 Mo. 843, 850 (Mo. 1932)* ("The proposition that the state is not subject to tort liability without its consent is too familiar to deserve extended citations).

This Court did announce an abrogation of sovereign immunity in all tort cases – and, therefore, in suits by one public entity against another – in *Jones v. State Highway Comm'n, 557 S.W.2d 225 (Mo. banc 1977).* But the Missouri legislature reinstated sovereign immunity as it existed at common law prior to *Jones* except to the "extent waived, abrogated or modified by statute." *§ 537.600.*

Section 537.600 itself waives sovereign immunity only for injuries resulting from public employees' negligent operation of a motor vehicle in the course of employment

15

and for injuries caused by dangerous conditions of the public entity's property. Section 537.610 waives sovereign immunity in certain circumstances involving insurance coverage. And, in the case of a political subdivision, as noted, there is no sovereign immunity for proprietary or ministerial governmental functions. *See Southers, 263 S.W.3d at 609.* But neither of these sections, nor any other statute or case, carve out an exception to sovereign immunity for suits by one public entity against another.

This Court has recognized that "the legislative intent [in reversing *Jones*] was not to carve out legislative exceptions to what under *Jones* became a judicial abrogation of sovereign immunity, but was, rather, to overrule *Jones* and to carve out limited exceptions to a general rule of immunity." *Bartley v. Special Sch. Dist. of St. Louis Cnty., 649 S.W.2d 863, 868 (Mo. banc 1983).* "[W]e are bound to hold that statutory provisions that waive sovereign immunity must be strictly construed." *Id.* This Court cannot read into the statute an exception to sovereign immunity or imply waivers not explicitly created in the statute. *Fort Zumwalt School Dist. v. State, 896 S.W.2d 918, 923 (Mo. banc 1995)*; *State ex rel. Cass Med. Ctr. v. Mason, 796 S.W.2d 621, 623-24 (Mo. banc 1990).*

In other words, in the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities, including suits against them by another public entity. This Court specifically recognized and applied this principle in *Bartley, 649 S.W.2d at 868.* In *Bartley,* suit was

16

filed against a school district on behalf of two students injured by another student while riding on a school bus. The school district claimed that under section 537.600, as then in effect, it had sovereign immunity because it had not purchased applicable insurance. Although section 537.600 later was amended, [9] under the statute as then in effect, this Court agreed. In so doing, *Bartley* stated that prior to the decision in *Jones*:

> Section 537.600 states that the doctrine of sovereign immunity as it existed at common law in Missouri prior to September 12, 1977 [when *Jones* was decided], except as modified, abrogated or waived by statute remains in full force and effect. *Prior to that date, sovereign immunity was the rule, not the exception, and it must be inferred from the words and the structure of this statutory pronouncement that the legislature intended to reenact sovereign immunity as the rule; …* Hence, we are bound to hold that statutory exceptions to sovereign immunity must be strictly construed."

*Bartley, 649 S.W.2d at* 868 (emphasis added).

*Bartley* concluded that if the plaintiffs did not fit within the pre-*Jones* exceptions for proprietary functions or where insurance was purchased, "[a]ny remedy which plaintiffs have under the facts of this case must be found within one of the exceptions to sovereign immunity created by section 537.600, *et seq.*, and none exists." *Id.* That analysis has direct application here. In the absence of a specific statutory waiver of sovereign immunity or a specific pre-*Jones* exception to sovereign immunity for suits

---

[9] As this Court noted in *Martin v. City of Washington, 848 S.W.2d 487 (Mo. banc 1993)*, *Bartley*'s holding that sovereign immunity was not waived even as to the exceptions set out in section 537.600 unless the political entity purchased insurance under section 537.610 was rendered moot by the amendment of section 537.600.2 to provide that the exceptions set out in section 537.600 apply even in the absence of liability insurance.

17

between public entities, sovereign immunity applies, for it is the rule – not the exception – even in the absence of prior cases specifically addressing this issue.

In any event, prior Missouri cases do at least inferentially recognize that one sovereign can assert sovereign immunity as a defense to a suit by another sovereign. For instance, in *Junior College Dist. of St. Louis, 149 S.W.3d at 446-49*, this Court held that St. Louis city was acting in a proprietary capacity and, so, sovereign immunity was waived. The necessary implication is that, had the city been acting in a governmental, non-ministerial capacity, sovereign immunity would have applied. *Id.*

Similarly, *Board of Education of the City of St. Louis v. State*, *134 S.W.3d 689, 693-94 (Mo. App. 2004),* held that St. Louis city waived its sovereign immunity from suit by the board of education when it "consented to be sued under the terms of a settlement agreement." Consent would not have been required had sovereign immunity not applied to suits between public entities. And, while these two cases were decided after the reinstatement of sovereign immunity in 1977, neither purported to be applying a new doctrine or to be abrogating a previously recognized exception for suits between public entities. There simply is no such exception.

Neither has the legislature created an exception to sovereign immunity for suits between public entities, perhaps because many of the public policy reasons for recognition of the doctrine apply regardless of whether the plaintiff is a public entity:

> The principle [of sovereign immunity] is fundamental, applies to every sovereign power, and but for the protection which it affords, the government would be unable to perform the various duties for which it was created. It would be impossible for it to collect revenue for its support,

18

without infinite embarrassments and delays, if it was subject to civil processes the same as a private person.

*Nichols v. United States, 74 U.S. 122, 126 (1868).* The doctrine is intended to lessen the expense and delay of lawsuits and to allow predictability as to the monetary expenses and needs of a public entity. Further, to permit one entity to recover from another would just shift the burden caused by the tort between public entities. On the other hand, MSD is correct that there are countervailing public policies that might favor restricting sovereign immunity in the case of suits between public entities, such as by providing more incentives to public entities to act carefully and non-negligently. But the balancing of these policy concerns is for the legislature, not this Court. This Court will not judicially create an exception to the common law rule of sovereign immunity for suits by one public entity against another.

## V.    *CONCLUSION*

For the reasons set out above, the trial court did not err in entering judgment in favor of the City. MSD failed to state an inverse condemnation claim and sovereign immunity bars MSD's tort claims against the City. The judgment is affirmed.

_____
**LAURA DENVIR STITH, JUDGE**

Breckenridge, C.J., Draper, Wilson Teitelman
and Russell, JJ., concur; Fischer, J., concurs in
separate opinion filed.

19



# SUPREME COURT OF MISSOURI
## en banc

THE METROPOLITAN ST. LOUIS SEWER DISTRICT,

    Appellant,

v.

THE CITY OF BELLEFONTAINE NEIGHBORS,

    Respondent,

v.

SHERRELL CONSTRUCTION INC., et al.,

    Defendants.

No. SC94831

## CONCURRING OPINION

I concur in the result of the principal opinion but write separately because I do not agree with the principal opinion's suggestion it is not appropriate to consider the intent of the drafters of our Constitution, or the historical context in which a provision was adopted, for purposes of interpretation.[1]  In my view, the fact that Metropolitan St. Louis

---

[1] This Court just recently extensively referred to the constitutional debates to determine the proper interpretation of article I, section 13 of the Missouri Constitution. *State v. Honeycutt*, 421 S.W.3d 410, 415-6 (Mo. banc 2013).

> This Court's primary goal in interpreting Missouri's constitution is to ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted.  This Court must assume that every

Sewer District (MSD) is a political subdivision—not a citizen—ends the debate of whether it is entitled to compensation for a taking under article I, section 26 of the Missouri Constitution.[2] In this case, both the plain language of article I, section 26 and the constitutional debates support the result reached by the principal opinion.

**Analysis**

This Court has long referred to the constitutional debates when interpreting the language of a constitutional provision "in order to arrive at the reason and purpose of the Constitution." *State ex rel. Aquamsi Land Co. v. Hostetter*, 79 S.W.2d 463, 469 (Mo. banc 1934) (internal quotations omitted); *see also Ensor v. Dir. of Revenue*, 998 S.W.2d 782, 784 n.6 (Mo. banc 1999) (relying on the debates for the proper context of the language of a constitutional provision in holding a statute was constitutional); *Household*

---

word contained in a constitutional provision has effect, meaning, and is not mere surplusage. When words do not have a technical or legal meaning, they must be given their plain or ordinary meaning unless such construction will defeat the manifest intent of the constitutional provision. The grammatical order and selection of the associated words as arranged by the drafters is also indicative of the natural significance of the words employed and [t]o this extent the intent of the amendment's drafters is influential. Weight should be given to cases interpreting constitutional provisions at or near the time the constitution was adopted because contemporaries of the drafters had the greatest opportunity to fully understand the meaning and intent of the language used.

*Id*. at 414-5 (internal citations and quotations omitted).

[2] Article I, section 26 of the Missouri Constitution provides:

That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be provided by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad purposes without consent of the owner thereof shall remain in such owner subject to the use for which it is taken.

*Fin. Corp. v. Shaffner*, 203 S.W.2d 734, 737 (Mo. banc 1947) (noting it is "proper" to consider the constitutional debates when interpreting a constitutional provision).

This case provides an ideal example of why reference to the constitutional debates is a proper aid for interpretation and context. In adopting article I, section 26, the debates show a desire to maintain the language of article II, section 21 of the Missouri Constitution of 1875—that the state cannot take private property for public use without just compensation. *See Debates of the Missouri Constitution 1945*, at p. 1719; *see also* Mo. Const. art. II, § 21 (1875). Intertwined in the maintenance of the previous language is that the right to be free from having private property taken for public use is reserved to *citizens* of Missouri. *Debates of the Missouri Constitution 1945*, at 1718 ("There are no limitations safeguarding the *citizen* with reference to his property, and I desire to point out first, as a fundamental principle of dealing with this article on the Bill of Rights as I understand it, we are here to write a declaration of right on the part of the *citizens* against a Government even though the citizens make up that government.") (emphasis added).

As the principal opinion correctly points out, MSD cites no case law "that has interpreted the word 'private' to include 'public' in its meaning." Principal op. at 7.[3] Moreover, the debates show that MSD as a political subdivision would not qualify for invocation of this right because it is not a citizen. Article I, section 26 is located in the

_____

[3] The issue in *Independence-Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131 (Mo. banc 2007), relied on by the principal opinion, was whether the word "employee" should be interpreted to mean private and public employee. The issues in this case are whether "private" means "public" and whether MSD is a citizen or political subdivision. Both questions are easily answered. While I do not dispute the holding of *Independence-National,* that case is certainly an outlier as it relates to whether the historical context and constitutional debates can assist in informing the intent and meaning of a constitutional provision.

3

Bill of Rights of the Missouri Constitution. This Court has previously recognized, in several respects, that political subdivisions do not have the same constitutional protections as citizens. In *Savannah R-III Sch. Dist. v. Pub. Sch. Ret. Sys of Mo.*, 950 S.W.2d 854, 858 (Mo. banc 1997), this Court held, "Because the retrospective law prohibition was intended to protect citizens and not the state, the legislature may constitutionally pass retrospective laws that waive the rights of the state." *See also Dye v. Sch. Dist. No. 32 of Pulaski Cnty.*, 195 S.W.2d 874, 879 (Mo. banc 1946). Similarly, in *City of Chesterfield v. Dir. of Revenue*, 811 S.W.2d 375, 377 (Mo. banc 1991), this Court held municipalities are not "persons" and do not have due process or equal protection rights and noted this was a holding often repeated by both state and federal courts.

Therefore, while I concur in the result of the principal opinion, MSD is not entitled to the protections found in our state Constitution's Bill of Rights, under article I, section 26, because it is not a citizen.

_____
Zel M. Fischer, Judge
